2020 WL 905753

2020 WL 905753
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Ronnie PEREZ, Individually and On Behalf
of All Others Similarly Situated, Plaintiff,
v.
HEXO CORP., Sébastien St. Louis, Ed Chaplin,
Michael Monahan, and Steve Burwash, Defendants.
George Hudak, Individually and On Behalf
of All Others Similarly Situated, Plaintiff,
v.
HEXO Corp., Sébastien St. Louis, Ed Chaplin,
Michael Monahan, and Steve Burwash, Defendants.

19 Civ. 10965 (NRB)
|
20 Civ. 00196 (NRB)
|
Signed 02/25/2020

**Attorneys and Law Firms**

Lucas E. Gilmore, Reed R. Kathrein, Hagens Berman Sobol Shapiro LLP, Berkeley, CA, Jason Allen Zweig, Hagens Berman Sobol Shapiro LLP, New York, NY, for Plaintiff Ronnie Perez.

Jeremy Alan Lieberman, Joseph Alexander Hood, II, Pomerantz LLP, New York, NY, for Plaintiff George Hudak.

Peter Andrew Stokes, Fulbright & Jaworski LLP, Austin, TX, Gerard G. Pecht, Fulbright & Jaworski L.L.P., Houston, TX, for Defendants.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE

**\*1** The above-captioned class actions (the "Actions") are brought against HEXO Corp. ("HEXO"), its President and Chief Executive Officer Sébastien St. Louis, its Chief Financial Officers Ed Chaplin and Michael Monahan,[1] and its Vice President of Strategic Finance Steve Burwash on behalf of a purported class of persons and entities who acquired HEXO securities between January 25, 2019,

and November 15, 2019, inclusive.[2] The Actions allege violations of the Securities Exchange Act of 1934.

For the reasons set forth below, the Court consolidates the Actions, appoints John B. Medley and Timothy Sweeney ("Medley and Sweeney") as lead plaintiffs, and appoints Bernstein Liebhard LLP as lead counsel.

## DISCUSSION

### I. Consolidation of the Actions

As the Actions concern substantially the same factual and legal issues, the Court consolidates them under Rule 42(a) of the Federal Rules of Civil Procedure. See Atwood v. Intercept Pharm., Inc., 299 F.R.D. 414, 415 (S.D.N.Y. 2014). Any other securities actions now pending or later filed in this District that arise out of or are related to the same facts as alleged in the above cases shall be consolidated with the Actions for all purposes. All relevant filings and submissions shall be maintained as one file under docket number 19 Civ. 10965 with the caption In re HEXO Corp. Securities Litigation.

### II. Appointment of Lead Plaintiff

Eleven applicants filed motions seeking to consolidate these cases, be appointed as lead plaintiff, and appoint their attorneys as lead counsel.[3] Nine of those applicants subsequently withdrew their motions, see ECF Nos. 63-70, 72, leaving only the motions of Chi Fung Wong ("Wong") and Medley and Sweeney in contention.

**\*2** Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in appointing a lead plaintiff, the Court is to presume that the "most adequate plaintiff" is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). With respect to the requirements of Rule 23, "typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA." Shi v. Sina

Corp., No. 05-2154, 2005 WL 1561438, at *2 (S.D.N.Y. July 1, 2005) (quoting In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998)). "The typicality threshold is satisfied where the proposed lead plaintiff's claims arise from the same conduct from which the other class members' claims and injuries arise." Teran v. Subaye, Inc., No. 11 Civ. 2614 (NRB), 2011 WL 4357362, at *5 (S.D.N.Y. Sept. 16, 2011) (internal quotation marks omitted). "The adequacy requirement is satisfied where (1) class counsel is qualified, experienced, and generally able to conduct the litigation, (2) there is no conflict between the proposed lead plaintiff and the members of the class, and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Foley v. Transocean Ltd., 272 F.R.D. 126, 131 (S.D.N.Y. 2011).

In evaluating adequacy, courts also consider such factors as the "available resources and experience of the proposed lead plaintiff," Blackmoss Inv., Inc. v. ACA Capital Holdings, Inc., 252 F.R.D. 188, 191 (S.D.N.Y. 2008), which serve as a proxy for the movant's financial and legal sophistication and, in turn, the likelihood that the movant will play a meaningful role in limiting the "lawyer-driven litigation that the PSLRA was designed to curtail," Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009). See also In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001) (noting that the PSLRA sought to ensure that courts would appoint a lead plaintiff -- "frequently a large institution or otherwise sophisticated investor" -- who "would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation [is] delivered at a reasonable price"). To that end, an investor seeking to be appointed lead plaintiff -- though he need only make a preliminary showing that he satisfies the requirements of Rule 23, see In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 102 (S.D.N.Y. 2005) -- "nonetheless need[s] to provide enough information to make [that] preliminary showing," Karp v. Diebold Nixdorf, Inc., No. 19 Civ. 6180 (LAP), 2019 WL 5587148, at *5 (S.D.N.Y. Oct. 30, 2019), adhered to on reconsideration, No. 19 Civ. 6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019). This is particularly true where, as here, the lead plaintiff applicant is an individual rather than an institutional investor. [4]

 **\*3** While there is no dispute that Wong has the largest financial interest in this proceeding, [5] and while Wong has put forth a *prima facie* showing of typicality insofar as he alleges that he purchased HEXO securities during the relevant period in reliance upon the allegedly false and misleading statements by the defendants, Medley and Sweeney maintain that Wong has failed to demonstrate his *prima facie* adequacy under Rule 23. They note, for example, that Wong's initial motion "provided no information about himself whatsoever, *e.g.*, his investment history, educational background, etc.," thereby precluding the necessary inquiry into whether Wong has any conflicts with other class members. ECF No. 73 at 6. In response, Wong submitted a sworn declaration stating, in relevant part, that he resides in Reno, Nevada, holds a Bachelor of Science degree in Engineering, that he is retired but previously worked as an engineer, and that he has been investing in securities for more than 25 years. ECF No. 75 ¶ 2. In his reply brief, Wong's counsel notes only that "[s]ince Mr. Wong is now retired, he has no issue devoting the time needed to effectively and vigorously pursue these Actions on behalf of the Class." ECF No. 74 at 4.

Notwithstanding this additional (albeit vague) information, the Court is skeptical that Wong -- an individual investor about whom little is known -- possesses the requisite sophistication to serve as lead plaintiff in this action. "While the size, available resources or even experience of a candidate are not dispositive factors in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., 229 F.R.D. 395, 417 (S.D.N.Y. 2004). Indeed, given Wong's failure to provide *any* information regarding his experience in his preliminary motion, the Court questions whether Wong will meaningfully oversee and control the prosecution of this consolidated class action. Cf. Karp, 2019 WL 5587148, at *6 (declining to appoint individual investor movants as lead plaintiff where movants had, *inter alia*, failed to make a preliminary showing of adequacy under Rule 23).

By contrast, Medley and Sweeney, who are next in line to become lead plaintiff given their claimed losses of $661,789.41, have submitted a joint declaration that offers detailed information in support of their adequacy under Rule 23. See ECF No. 55-3 ¶¶ 4-5 (explaining that Mr. Medley, who individually suffered over $400,000 in losses on his HEXO investments, founded and ran an energy services company for which he regularly oversaw attorneys, accountants and other professionals, and further explaining that Mr. Sweeney, who suffered over $250,000 in losses on his HEXO investments, was previously a partner at the law firm now known as Pillsbury Winthrop Shaw Pittman LLP). [6]

In light of their claimed losses and the additional information provided regarding their capacity to manage this litigation, the Court concludes that Medley and Sweeney are presumptively the lead class plaintiffs. [7]

**\*4** The most adequate plaintiff presumption may be rebutted, however, upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). While Wong presents two arguments that Medley and Sweeney will not adequately represent the class, neither successfully rebuts the presumption.

Wong argues, first, that Medley and Sweeney overstated their financial losses by failing to deduct their "in-and-out" losses. See ECF No. 71 at 8. Medley and Sweeney note in response, however, that when their "in-and-out" losses and "in-and-out" gains are backed out, their financial interest in the litigation actually increases. See ECF No. 77 at 7, 9. They note, in any event, that even accepting Wong's calculation of their losses, Medley and Sweeney still have the largest financial interest of the other movants. See ECF No. 77 at 9. Second, Wong argues that Medley is atypical of other class members because he allegedly day-traded HEXO stock. See ECF No. 71 at 9. Medley disputes this characterization. See ECF No. 77 at 11. The dispute is immaterial, however, in light of the fact that "the prevailing view in this Circuit is that 'day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts.' " Prefontaine v. Research in Motion Ltd., No. 11 Civ. 4068 (RJS), 2012 WL 104770, at \*4 (S.D.N.Y. Jan. 5, 2012) (quoting In re Initial Pub. Offering Sec. Litig., 227 F.R.D. 65, 108 (S.D.N.Y. 2004)), rev'd on other grounds, 471 F.3d 24 (2d Cir. 2006).

In sum, no evidence presented to the Court provides proof to overcome the presumption that Medley and Sweeney be

appointed lead plaintiff. See 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Their motion for appointment as lead plaintiff is, accordingly, granted, and Wong's motion is denied.

### III. Appointment of Lead Counsel

The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig., No. 03-1529, 2008 WL 4128702, at \*2 (S.D.N.Y. Sept. 3, 2008) (internal quotation marks omitted). Medley and Sweeney have retained Bernstein Liebhard LLP as their counsel. Bernstein Liebhard has experience prosecuting securities class actions, and the Court has no reason to believe that it will not adequately represent the interests of the class. Accordingly, the Court approves their selection as lead counsel.

### CONCLUSION

For the foregoing reasons, the cases are ordered consolidated as In re HEXO Corp. Securities Litigation, 19 Civ. 10965 (NRB). Medley and Sweeney are appointed lead plaintiffs, and Bernstein Liebhard LLP is appointed lead counsel. Consistent with the Order dated December 23, 2019 (ECF No. 18), the parties are instructed to submit to the Court an agreed-upon schedule for the filing of an amended complaint and the response thereto. The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 19, 22, 26, 29, 34, 36, 42, 45, 49, 52 and 57.

**SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 905753

---

Footnotes

1    According to the complaints filed in the above-captioned cases, Ed Chaplin served as Chief Financial Officer at all relevant times until May 2019 and Michael Monahan served as Chief Financial Officer from May 2019 through October 2019.

2    "HEXO is purportedly a licensed producer and distributor of branded cannabis products. The Company caters to both the medical and recreational (adult-use) cannabis markets with its Hydropothecary (medical) and HEXO (adult-use) brands." ECF No. 1 ¶ 2.

3    The Court received timely motions to be appointed lead plaintiff from: (1) Maxwell Bergmann, represented by Wolf Haldenstein Adler Freeman & Herz LLP (ECF Nos. 19-21); (2) Franklin Espinal, represented by The Rosen Law Firm, P.A. (ECF Nos. 22-24); (3) Gary Leider, represented by Bragar, Eagel & Squire, P.C. (ECF Nos. 26-28); (4) Abe Kashani,

2020 WL 905753

represented by Scott+Scott Attorneys at Law LLP (ECF Nos. 29-32); (5) Michael Luca, represented by Hagens Berman Sobol Shapiro LLP (ECF Nos. 34-35, 40); (6) Anthony LaMarca and Edward Zhuo, represented by Glancy Prongay & Murray LLP (ECF Nos. 36, 38-39, 41); (7) Chi Fung Wong, represented by Levi & Korsinsky, LLP (ECF Nos. 37, 42-44); (8) Steven Ceresa, represented by Faruqi & Faruqi, LLP (ECF Nos. 45-48); (9) Timothy Sweeney and John B. Medley, represented by Bernstein Liebhard LLP (ECF Nos. 49-50, 55); (10) Joseph E. Majocha, represented by Pomerantz LLP (ECF Nos. 51-52, 54, 56, 59); and (11) Dr. John M. Kihm, represented by Robbins Geller Rudman & Dowd LLP (ECF Nos. 57-58, 60).

4    The preference of "many courts ... for institutional investors to be appointed as lead plaintiffs," In re Gentiva Sec. Litig., 281 F.R.D. 108, 113 (E.D.N.Y. 2012), reflects an underlying assumption that institutional investors have a certain degree of financial and legal sophistication. See In re EVCI Career Colleges Holding Corp. Sec. Litig., No. 05 Civ. 10240 CM, 2007 WL 2230177, at *1 (S.D.N.Y. July 27, 2007) (explaining that "[t]he PSLRA was enacted in part to ensure that sophisticated institutional investors ... would participate in and control securities litigation").

5    Wong claims $863,443.56 in total losses, ECF No. 43 at 10, whereas Medley and Sweeney claim $661,789.41 in total losses, ECF No. 50 at 6.

6    See also ECF No. 72 at 2 (Response of Michael Luca to Competing Motions to Consolidate Related Cases, Appoint Lead Plaintiff, and Approve Selection of Lead Counsel) (noting that "while Medley/Sweeney filed a joint declaration providing support as to their adequacy under Rule 23 -- describing who they are, their sophistication (one is a lawyer) and their plan to work together with counsel -- virtually nothing is known about Chi Fung Wong except his signature to a vanilla certification which does not even indicate that he retained counsel or knows he is moving to be a lead plaintiff") (internal citations omitted).

7    The PSLRA expressly permits a "group of persons" to serve as lead plaintiff, see 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), and courts in this District have found that allowing a group to serve as lead plaintiff is appropriate where there is evidence that the members "will be able to function cohesively and to effectively manage the litigation apart from their lawyers." Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). Because Medley and Sweeney have, *inter alia*, provided a detailed overview of their decision-making and communication plans, see ECF No. 55-3 ¶ 10, the Court finds that they satisfy the requirements of the PSLRA.

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.