**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DENNIS BORN and MARILYNN BORN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> QUAD/GRAPHICS, INC., J. JOEL QUADRACCI, and DAVID J. HONAN, <br><br> Defendants. | Case No. 1:19-cv-10376-VEC |

**MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ...................................................................................... 1

II.     ARGUMENT .................................................................................................................. 3

        A.      The PSLRA-Mandated Procedure for Appointing a Lead Plaintiff ........................ 3

        B.      The Borns Are the Presumptively Most Adequate Plaintiff ................................... 3

        C.      The Presumption that the Borns Are the Most Adequate Plaintiff Has Not Been
                Rebutted ............................................................................................................... 8

        D.      The Borns' Selection of Counsel Should Be Approved ...................................... 10

III.    CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

CASES

*Cha v. Kinross Gold Corp.*,
No. 12 Civ. 1203 (PAE), 2012 WL 2025850 (S.D.N.Y. May 31, 2012)................................... 5

*Cortina v. Anavex Life Scis. Corp.*,
No. 15-CV-10162 (JMF), 2016 WL 1337305 (S.D.N.Y. Apr. 5, 2016) ................................... 6

*Faris v. Longtop Fin. Techs. Ltd.*,
No. 11 Civ. 3661, 2011 U.S. Dist. LEXIS 112970 (S.D.N.Y. Oct. 4, 2011) ........................... 8

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .................................................................................................... 4

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) ................................................................................... 6

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ................................................................................................ 8

*In re Microstrategy, Inc. Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2003) ..................................................................................... 10

*In re Network Assocs., Inc. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..................................................................................... 6

*In re Party City Litig.*,
189 F.R.D. 91 (D.N.J. 1999)................................................................................................... 10

*Karp v. Diebold Nixdorf, Inc.*,
No. 1:19-cv-06180-LAP, 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019)................................... 9

*Kniffin v. Micron Tech., Inc.*,
379 F. Supp. 3d 259 (S.D.N.Y. 2019)..................................................................................... 10

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)....................................................... 4

*Marjanian v. Allied Nevada Gold Corp.*,
No. 2:14-CV-0650-JCM-VCF, 2014 WL 12769810 (D. Nev. Nov. 7, 2014)........................... 4

*Mohanty v. BigBand Networks, Inc.*,
No. C 07–5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008)........................................ 9

*Pio v. Gen. Motors Co.*,
No. CIV. 14-11191, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ......................................... 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ..................................................................................... 4

*Quan v. Advanced Battery Techs., Inc.*,
No. 11 CIV. 2279 CM, 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ........................................ 6

*Sallustro v. CannaVest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015) .................................................................................. 4

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) ............................................................................. 9, 10

*Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ....................................................................................... 8

*Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*,
No. 16-cv-02400-AT-SN, 2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016) ............................... 6

## STATUTES

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................ *passim*

## RULES

Fed. R. Civ. P. 23 .................................................................................................... 1, 2, 3

Dennis and Marilynn Born (together, the "Borns" or "Movants") respectfully submit this memorandum of law in further support of their motion for consolidation of the above-captioned actions, for appointment as lead plaintiff and approval of lead counsel, and in opposition to the competing motions.[1]

## I.    PRELIMINARY STATEMENT

Five movants filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): the Borns (Dkt. No. 25); the Westmoreland County Employee Retirement Fund (Dkt. No. 9); Larry Ameling and Sameer Tuffaha (the "Quad/Graphics, Inc. Investor Group," Dkt. No. 21); Hani Anklis (Dkt. No. 19); and the Alaska Electrical Pension Fund (Dkt. No. 13).

With respect to the lead plaintiff determination, the question presently before the Court is which of these movants is the "most adequate plaintiff"—*i.e.*, the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff, and provides a rebuttable presumption that the most adequate plaintiff is the movant with the "largest financial interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Courts have historically applied a wide range of methodologies to determine which movant has the largest financial interest.  This is because courts are generally free to select any method, so long as it is both rational and consistently applied.  Here, the financial interest question it is exceedingly complex because, in addition to the wide range of ways to calculate financial interest, the movants are claiming that two distinct class periods should govern the

---

[1] On January 10, 2020, the Court consolidated this action with a substantially similar action captioned *Bloom v. Quad/Graphics, Inc.*, Case No. 19-cv-11860. *See* Dkt. No. 31.

1

financial interest calculation. *Compare* Dkt. No 14 (using February 21, 2018 through October 29, 2019, inclusive as the Class Period) *with* Dkt. No. 20 (using February 22, 2017 through October 29, 2019, inclusive as the class period). Depending on which method the Court selects to determine financial interest, and which class period the Court applies, numerous movants could be considered to have the largest financial interest.

There is only one movant, however, that has the largest financial interest under a widely accepted and objective metric for determining financial interest, regardless of which class period is used: the Borns. The Borns have the largest number of retained shares under both the shorter and longer class periods. As such, the Borns have the largest financial interest. Additionally, the Borns are ideal lead plaintiff candidates. As they already demonstrated in their memorandum in support of their lead plaintiff motion (Dkt. No. 26), the Borns satisfy the requirements of Rule 23. Moreover, they were the initial plaintiffs that retained counsel and instituted this action, demonstrating their zeal and willingness to prosecute this securities class action against Quad/Graphics, Inc. ("Quad/Graphics") and its executives. *See* Dkt. No. 1. Since they have the largest financial interest and are adequate and typical representatives, the Borns are the presumptively "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

As the Borns are the presumptively most adequate plaintiff, and the presumption has not been rebutted, the Borns should be appointed lead plaintiff, and their selection of counsel should be approved.[2]

---

[2] "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

II.    **ARGUMENT**

A.    **The PSLRA-Mandated Procedure for Appointing a Lead Plaintiff**

The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," *i.e.*, the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" is the movant that "has either filed the complaint or made a motion," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii). After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

B.    **The Borns Are the Presumptively Most Adequate Plaintiff**

The Borns satisfy all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). First, the Borns filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 25; 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). Second, the Borns satisfy the requirements of Rule 23, as demonstrated in their memorandum of law in support of their lead plaintiff motion. *See* Dkt. No. 26 at 6-7; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Finally, as explained *infra*, the Borns have the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb).

While the PSLRA does not specify a means of calculating the "largest financial interest,"

3

"in the absence of statutory guidance or Second Circuit case law, the method used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 406–07 (S.D.N.Y. 2004); *see also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("To make this comparison, the district court must calculate each potential lead plaintiff's financial interest in the litigation. In so doing, the court may select accounting methods that are both rational and consistently applied.").

Courts have typically considered: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See, e.g.*, *Pirelli Armstrong*, 229 F.R.D. at  404 (*quoting Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)).  In recent years, courts have used a multitude of methods for determining the fourth of the *Lax* factors: the approximate losses suffered by movants.  These methods have included, amongst others, calculations under the Last-in, First-out ("LIFO") methodology, the First-in, First-out ("FIFO") methodology, the modified LIFO[3] methodology, and the *Dura* methodology.[4] As the following chart demonstrates, depending on

---

[3] The modified LIFO methodology is similar to the LIFO calculation except that all shares that were purchased or sold prior to a corrective disclosure are removed.  *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) (holding that losses from sales prior to a corrective disclosure "are not recoverable under *Dura* and cannot be considered in calculating [movant's] losses").

[4] Under a *Dura* methodology, a movant's financial interest is determined by multiplying the number of shares purchased during the Class Period and held at each corrective disclosure date by the price decline as a result of each corrective disclosure and then applying certain limitations. *See, e.g.*, *Marjanian v. Allied Nevada Gold Corp.*, No. 2:14-CV-0650-JCM-VCF, 2014 WL 12769810, at *5 (D. Nev. Nov. 7, 2014).

which methodology and/or class period is used, different movants can claim that they have the

largest financial interest:[5]

| Movant | Class Period | Gross Shares Purchased | Net Shares Retained | Net Expenditure (Common Stock and Options) | LIFO Loss | Modified LIFO | Dura Loss |
|---|---|---|---|---|---|---|---|
| Dennis & Marilynn Born | 2/22/17– 10/29/19 | 62,317 | 54,297 | -$557,442 | -$320,005 | -$320,832 | -$278,225 |
| | 2/21/18– 10/29/19 | 61,297 | 54,297 | -$557,458 | -$320,021 | -$320,832 | -$278,225 |
| Alaska Electrical Pension Fund | 2/22/17– 10/29/19 | 46,800 | 32,200 | -$582,987 | -$442,180 | -$398,875 | -$206,724 |
| | 2/21/18– 10/29/19 | 46,800 | 32,200 | -$582,987 | -$442,180 | -$398,875 | -$206,724 |
| Hani Anklis | 2/22/17– 10/29/19 | 227,063 | 47,204 | -$1,253,999 | -$1,015,111 | -$691,656 | -$296,540 |
| | 2/21/18– 10/29/19 | 30,221 | 2,744 | -$137,224 | -$123,295 | -$15,408 | -$11,107 |
| Westmoreland County Employee Retirement Fund | 2/22/17– 10/29/19 | 15,477 | 15,477 | -$375,628 | -$307,949 | -$307,949 | -$99,341 |
| | 2/21/18– 10/29/19 | 15,477 | 15,477 | -$375,628 | -$307,949 | -$307,949 | -$99,341 |
| *Larry Ameling* | 2/22/17– 10/29/19 | 5,000 | 5,000 | -$52,368 | -$30,504 | -$30,953 | -$32,100 |
| | 2/21/18– 10/29/19 | 5,000 | 5,000 | -$52,368 | -$30,504 | -$30,953 | -$32,100 |
| *Sameer Tuffaha* | 2/22/17– 10/29/19 | 2,700 | 2,400 | -$37,308 | -$26,813 | -$26,755 | -$14,519 |
| | 2/21/18– 10/29/19 | 2,700 | 2,400 | -$37,308 | -$26,813 | -$26,755 | -$14,519 |
| Quad/Graphics, Inc. Investor Group | 2/22/17– 10/29/19 | 7,700 | 7,400 | -$89,676 | -$57,317 | -$57,708 | -$46,619 |
| | 2/21/18– 10/29/19 | 7,700 | 7,400 | -$89,676 | -$57,317 | -$57,708 | -$46,619 |

In situations like this, where "the fourth factor is heavily dependent on the method

applied and numbers chosen to calculate losses," courts have found that "the first three factors

---

[5] The data in this chart is derived from the movants' loss charts. Moreover, a FIFO calculation was not included since "the overwhelming trend ... nationwide has been to use LIFO to calculate such losses." *Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012). Also, as is customary, the gross and net share figures do not include options transactions.

5

provide the most objective measurement of a movant's stake in the litigation" and the "second factor – retained shares – to be the most determinative factor in approximating an investor's potential recovery." *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014); *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (concluding net shares purchased should be used to determine financial interest as "the candidate with the most net shares purchased will normally have the largest potential damage recovery")[6]; *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (finding net shares purchased "determinative" of financial interest). Courts in this district are in accord. For example, when facing competing motions, District Court Judge Colleen McMahon used net retained shares to determine which movant had the largest financial interest. *Quan v. Advanced Battery Techs., Inc.*, No. 11 CIV. 2279 CM, 2011 WL 4343802, at *2 (S.D.N.Y. Sept. 9, 2011) ("From the evidence presented to the Court, it is clear that Sanderson held the largest amount of retained shares at the end of the class period and therefore suffered the largest loss as compared with all movants.'"); *see also Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162 (JMF), 2016 WL 1337305, at *2 (S.D.N.Y. Apr. 5, 2016) (when the movant with the greatest loss was unclear the court turned to net retained shares and net expenditures to determine financial interest).[7]

---

[6] The *Network* court further explained that where, as here, there is only one corrective disclosure that net shares is the preferred method since "all shares would have been inflated to the same extent" and the "test simply reduces to the net number of shares bought and sold during the class period." *Network Assocs.*, 76 F. Supp. 2d at 1027.

[7] While Mr. Anklis has by far the greatest amount of gross shares purchased, this factor is given minimal weight since it often includes shares that were not impacted by the fraud such as shares that were purchased and then sold before a corrective disclosure. *See Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*, No. 16-cv-02400-AT-SN, 2016 WL 11648466, at *1 (S.D.N.Y. Nov. 29, 2016) ("The trend among New York courts is to view . . . the number of shares purchased [as] the least important."). This is

The Borns have the largest financial interest as measured by net shares retained, regardless of which class period is used:

**Class Period: Feb. 22, 2017 to Oct. 29, 2019**

| Movant | Net Shares Retained |
|---|---|
| Dennis & Marilynn Born | 54,297 |
| Alaska Electrical Pension Fund | 32,200 |
| Hani Anklis | 47,204 |
| Westmoreland County Employee Retirement Fund | 15,477 |
| *Larry Ameling* | 5,000 |
| *Sameer Tuffaha* | 2,400 |
| Quad/Graphics, Inc. Investor Group | 7,400 |

**Class Period: Feb. 21, 2018 to Oct. 29, 2019**

| Movant | Net Shares Retained |
|---|---|
| Dennis & Marilynn Born | 54,297 |
| Alaska Electrical Pension Fund | 32,200 |
| Hani Anklis | 2,744 |
| Westmoreland County Employee Retirement Fund | 15,477 |
| *Larry Ameling* | 5,000 |
| *Sameer Tuffaha* | 2,400 |
| Quad/Graphics, Inc. Investor Group | 7,400 |

exactly the situation here, where Mr. Anklis's gross share figure is substantially inflated by shares that were sold before the corrective disclosure and were not damaged.

Accordingly, the Borns have the largest financial interest in the relief sought by the class. Since the Borns have the largest financial interest in the relief sought by the class, filed a timely motion, and satisfy the requirements of Rule 23, they are the presumptively the most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### C.   The Presumption that the Borns Are the Most Adequate Plaintiff Has Not Been Rebutted

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No proof has been presented that Borns would be inadequate or subject to unique defenses. As such, the Borns should be appointed as lead plaintiff, and other movants should not be entitled to further consideration. *See Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").

The Court should reject any movant's request that the Court should conduct a comparative analysis between the movants and/or require movants to provide assorted additional information regarding their sophistication and resources. *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98-99 (S.D.N.Y. 2005) ("The lead plaintiff determination does not depend on the court's judgment of which party would be best lead plaintiff for the class, but rather which candidate fulfils the requirements of the Act."); *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3661, 2011 U.S. Dist. LEXIS 112970, at *14 (S.D.N.Y. Oct. 4, 2011) ("[T]he lead plaintiff determination does not depend on the court's judgment of which party would be the best lead plaintiff for the class, but rather which candidate fulfills the requirements of the PSLRA."). For example, if another movant claims that the Borns have not provided enough information about

8

themselves to make a prima facie showing of typicality and adequacy, this argument should be rejected.[8] The Borns disclosed their names, their county of residence (Sheboygan County, Wisconsin, *see* Dkt. No. 2 at 2), and their class period transactions (*see* Dkt. Nos. 1 at 23-26, 26 at 6 n.1 & Exhibit B). This is enough to make a preliminary showing of typicality and adequacy for purposes of the lead plaintiff determination under Rule 23. *See Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015). It is also more than enough information to run a standard background check as is typical in these types of actions where there are competing movants—so that any potentially disqualifying information becomes known. No such disqualifying information exists with respect to the Borns.

To the contrary, the Borns are sophisticated investors that lost hundreds of thousands of dollars on Quad/Graphics stock. They retained counsel and initiated this action demonstrating their willingness and desire to litigate on behalf of the class. Additionally, Mr. Born has been investing in securities for a decade and has actively followed Quad/Graphics, which is a regional business near the Borns' hometown. Thus, any argument that an institutional investor is more adequate than the Borns is without merit. *See Mohanty v. BigBand Networks, Inc.*, No. C 07–5101 SBA, 2008 WL 426250, at * 6 (N.D. Cal. Feb. 14, 2008) (citing cases and explaining "a plaintiff's mere status as an institutional investors does not provide any presumption that the

---

[8] There has been an uptick in this specious attack on *bona fide* movants since the lead plaintiff ruling in *Karp v. Diebold Nixdorf, Inc*. The *Diebold* court was "disquieted by the errors contained in the [movant's] original submissions" including "exaggerated loss totals" of "some 34%" which "struck at the core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation." No. 1:19-cv-06180-LAP, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019). The court held that these errors "taken together" with the movant's litigation inexperience undermined the adequacy of the movant. *Id*. The court did not hold that all movants must provide unspecified additional information regarding their litigation and securities experience.

9

institutional plaintiff is a more adequate lead plaintiff than an individual investors with a larger financial interest.").[9]

### D.     The Borns' Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the approval of the Court, *see* 15 U.S.C. § 78u-4(a)(3)(B)(v), and "[t]here is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Deloitte Touche*, 95 F. Supp. 3d at 623. As such, the Borns' selection of Glancy Prongay & Murray LLP should be approved.

Glancy Prongay & Murray LLP has the expertise, resources, and experience needed to efficiently and effectively conduct this litigation. *See* Dkt. No. 27, Exhibit C (Glancy Prongay & Murray LLP firm résumé). The firm has more than 20 years of experience successfully representing injured investors. *See id.* By approving the Borns' selection of counsel, the Court will ensure that the class will receive the highest caliber of legal representation. Accordingly, the Borns' selection of lead counsel for the class should be approved. *See Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 266 (S.D.N.Y. 2019) (approving Glancy Prongay & Murray LLP as lead counsel and finding the firm "competent and experienced").

### III.    CONCLUSION

For the foregoing reasons, the Borns respectfully requests that the Court deny the competing lead plaintiff motions, and enter an order: (1) appointing Movants as lead plaintiff; (2)

---

[9] While the Borns believe that they should be appointed lead plaintiff alone, they would not be opposed to being appointed co-lead plaintiffs with an institutional investor if the Court so desires. *See In re Party City Litig.*, 189 F.R.D. 91, 114 (D.N.J. 1999) (appointing individual investor and institutional investor as co-lead plaintiffs); *In re Microstrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 439 (E.D. Va. 2003) (appointing two-person family and union pension fund as co-lead plaintiffs).

approving their selection of Glancy Prongay & Murray LLP as lead counsel for the class; and (3)

granting such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: January 24, 2020          **GLANCY PRONGAY & MURRAY LLP**

By: _s/ Gregory B. Linkh_
Gregory B. Linkh
230 Park Ave., Suite 530
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

and-

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Movants and [Proposed] Lead
Counsel for the Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel*

11

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On January 24, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 24, 2020, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh