UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| DENNIS BORN and MARILYNN BORN, Individually and on Behalf of All Others Similarly Situated, | x : : : : : : : : : : : : : : : x | Civil Action No. 1:19-cv-10376-VEC (**Consolidated**) |
| Plaintiffs, | | CLASS ACTION |
| vs. | | MEMORANDUM OF LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS |
| QUAD/GRAPHICS, INC., J. JOEL QUADRACCI and DAVID J. HONAN, | | |
| Defendants. | | |

4820-4027-6146.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT ..............................................................................................................3

      A.    The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class ....................................................................................................3

      B.    Independent of Mr. Anklis' Class Period Manipulation, He Is Not a Suitable Lead Plaintiff Candidate ............................................................9

      C.    The Presumption of "Most Adequate Plaintiff" Which Lies in Favor of the Pension Fund Cannot Be Rebutted ...................................................13

      D.    The Remaining Movants Do Not Qualify for the PSLRA's Presumption.............14

III.  CONCLUSION...........................................................................................................15

4820-4027-6146.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Elec. Pension Fund v. Bank of Am., N.A.*,
  2018 WL 8581152 (S.D.N.Y. Nov. 13, 2018) ....................................................................... 13

*Alaska Elec. Pension Fund. v. Pharmacia Corp.*,
  No. 3:03-cv-01519-AET-TJB (D.N.J. Jan. 30, 2013) ........................................................... 13

*Bhojwani v. Pistiolis*,
  2007 WL 9228588 (S.D.N.Y. July 31, 2007) ...................................................................... 13

*Brown v. Biogen IDEC, Inc.*,
  2005 U.S. Dist. LEXIS 19350 (D. Mass. July 26, 2005) ......................................................... 8

*CalPERS v. ANZ Securities, Inc.*,
  __ U.S. __, 137 S. Ct. 2042 (2017) .................................................................................... 6

*Camp v. Qualcomm Inc.*,
  2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ........................................................................ 10

*China Agritech, Inc. v. Resh*,
  __ U.S. __, 138 S. Ct. 1800 (2018) ..................................................................................... 6

*Clair v. DeLuca*,
  232 F.R.D. 219 (W.D. Pa. 2005) ....................................................................................... 10

*Ford v. Pro Shares Trust II*,
  No. 1:19-cv-00886-DLC (S.D.N.Y. Apr. 29, 2019) ............................................................. 10

*Gross v. AT&T Inc.*,
  No. 1:19-cv-02892-VEC (S.D.N.Y. June 24, 2019) ........................................................... 3, 9

*Gutman v. Sillerman*,
  2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) ....................................................................... 2

*In re Bausch & Lomb Inc. Sec. Litig.*,
  244 F.R.D. 169 (W.D.N.Y 2007) ...................................................................................... 2, 6

*In re The Boeing Co. Aircraft Sec. Litig.*,
  2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ...................................................................... 10

*In re BP, PLC Sec. Litig.*,
  758 F. Supp. 2d 428 (S.D. Tex. 2010) .................................................................................. 4

4820-4027-6146.v1

**Page**

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cit. 2001)..................................................................................................15

*In re Centerline Holding Co. Sec. Litig.*,
2008 WL 1959799 (S.D.N.Y. May 5, 2008) .......................................................................4, 5

*In re Comdisco Sec. Litig.*,
150 F. Supp. 2d 943 (N.D. Ill. 2001) ......................................................................................6

*In re Gemstar-TV Guide Int'l, Sec. Litig.*,
209 F.R.D. 447 (C.D. Cal. 2002) ..........................................................................................10

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ...........................................................................................14

*In re Michaels Stores Inc. Sec. Litig.*,
No. 3:03-cv-00246-M (N.D. Tex. Oct. 24, 2003).....................................................................8

*In re The Reserve Fund Sec. & Deriv. Litig.*,
No. 1:09-md-02011-PGG (S.D.N.Y. Aug. 5, 2009)..................................................................8

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM, Inc.*,
2015 U.S. Dist. LEXIS 153202 (S.D.N.Y. Nov. 12, 2015).....................................................14

*Juliar v. Sunopta Inc.*,
2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ........................................................................14

*Karp v. Diebold Nixdorf, Inc.*,
2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019)......................................................................9, 12

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) .........................................................................12

*Malasky v. IAC/InteractiveCorp*,
2004 U.S. Dist. LEXIS 25832 (S.D.N.Y. Dec. 21, 2004) ......................................................14

*Maliarov v. Eros Int'l PLC*,
2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016)...........................................................................2

*Pelletier v. Endo Int'l PLC*,
316 F. Supp. 3d 846 (E.D. Pa. 2018) ................................................................................7, 14

*Piven v. Sykes Enters.*,
137 F. Supp. 2d 1295 (M.D. Fla. 2000)................................................................................10

- iii -

**Page**

*Plaut v. Goldman Sachs Grp., Inc.*,
  2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)................................................................12

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
  256 F.R.D. 620 (E.D. Wis. 2009) .....................................................................................4

*Police & Fire Ret. Sys. v. SafeNet, Inc.*,
  2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007) ...............................................14

*Randall v. Fifth St. Fin. Corp.*,
  2016 U.S. Dist. LEXIS 15719 (S.D.N.Y. Feb. 1, 2016) ..................................................14

*Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
  269 F.R.D. 291 (S.D.N.Y. 2010) ....................................................................................14

*Ret. Sys. v. Macquarie Infrastructure Corp.*,
  2019 WL 364570 (S.D.N.Y. Jan. 30, 2019) ...................................................................14

*Tomaszewski v. Trevena, Inc.*,
  383 F. Supp. 3d 409 (E.D. Pa. 2019) .............................................................................13

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §77z-1(a)(2)(A)(i) .........................................................................................................2, 8
  §78u-4(a)(3)(B)(iii)(I).....................................................................................................1, 3
  §78u-4(a)(3)(B)(iii)(I)(bb) .................................................................................................4
  §78u-4(a)(3)(B)(iii)(I)(cc)..................................................................................................3
  §78u-4(a)(3)(B)(iii)(cc).....................................................................................................13
  §78u-4(a)(3)(B)(iv) ............................................................................................................8

## SECONDARY AUTHORITIES

H.R. Conf. Rep. No. 104-369 (1995)............................................................................14

4820-4027-6146.v1

Proposed Lead Plaintiff Alaska Electrical Pension Fund ("Pension Fund") respectfully submits this memorandum of law in opposition to the competing motions for appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.   INTRODUCTION

The PSLRA provides that the "court shall adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Of the five movants, only the Pension Fund satisfies both prongs of the PSLRA's test.[1]

Although Mr. Anklis claims a larger financial interest than the Pension Fund, his losses are the product of an eleventh-hour complaint filed four business days before the lead plaintiff deadline by his counsel on behalf of a different client, Victoria Bloom, who never even authorized the filing of that complaint (understandably so, as the expanded class period *reduced* the size of Ms. Bloom's losses). Indeed, the starting date of the *Bloom* class period was manipulated to conform to Mr. Anklis' trading history, rather than to the facts of the case. The details surrounding the filing of the *Bloom* complaint make clear that Mr. Anklis' class period expansion is plainly inconsistent with the goals of the PSLRA. Mr. Anklis and his counsel should not be rewarded with appointment as lead plaintiff to the detriment of the class and the integrity of the PSLRA lead plaintiff selection process.

To wit:

---

[1]   The movants are: (1) the Pension Fund (ECF No. 14); (2) Hani Anklis (ECF No. 20); (3) Dennis and Marilynn Born (ECF No. 26); (4) Westmoreland County Employee Retirement Fund (ECF No. 10); and (5) Larry Ameling and Sameer Tuffaha (ECF No. 22). On January 10, 2020, the Court consolidated *Born v. Quad/Graphics, Inc., et al.*, No. 1:19-cv-10376-VEC (S.D.N.Y.) (filed November 7, 2019), and *Bloom v. Quad/Graphics, Inc., et al.*, No. 1:19-cv-11860-VEC (S.D.N.Y.) (filed December 27, 2019). *See Bloom*, ECF No. 10.

4820-4027-6146.v1

- The *Bloom* complaint fails to allege *a single fact* (beyond what is contained in the *Born* complaint) suggesting that defendants' wrongdoing dated back to February 22, 2017.

- In the more plausible *Born* class period, Mr. Anklis is a "net-gainer" and "net seller," which would almost certainly disqualify him from being appointed as a lead plaintiff. *See In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173-74 (W.D.N.Y 2007) ("Courts have *consistently* rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices.").[2]

- All but confirming that Mr. Anklis was behind the filing of the *Bloom* complaint, Victoria Bloom's trading data reveals that it was *against her financial interest to file a complaint expanding the class period*, as her losses are higher in the *Born* class period ($8,285.28), than in the *Bloom class period* ($7,967.04).

- To make matters worse, in direct contravention of the PSLRA, Ms. Bloom's Certification (signed six days before her complaint was filed) fails to affirm that she was given an opportunity to review the complaint being filed on her behalf, much less that she authorized its filing. *Compare* 15 U.S.C. §77z-1(a)(2)(A)(i) (the certification *must*: *"state[] that the plaintiff has reviewed the complaint and authorized its filing"*) *with Bloom*, ECF No. 1-1 at ¶1 ("I have reviewed *a* complaint filed against Quad/Graphics, Inc. and others for violations of the federal securities laws.").

- Finally, the eleventh-hour *Bloom* complaint was filed just four business days before the lead plaintiff deadline, and squarely during the 2019 holiday season, which encroached on the time class-members and competing movants had to receive notice and analyze the merits of the *Bloom* complaint.[3]

Even if Mr. Anklis's maneuver were to be overlooked – and it should not be – his motion should be denied for additional reasons. For example, the record is devoid of any information about

---

[2]     All emphasis is added and citations are omitted unless otherwise noted.

[3]     The Court should be "hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court." *Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016). Indeed, a "principal purpose of the PSLRA was to prevent just the kind of gamesmanship in which [Anklis] and its counsel have engaged here." *Gutman v. Sillerman*, 2015 WL 13791788, at *3 (S.D.N.Y. Dec. 8, 2015) ("I would not select WGOF as lead plaintiff, or its counsel as lead counsel, in any event. They engaged in chicanery in order to try to get WGOF into the game when time was expiring.").

4820-4027-6146.v1

Mr. Anklis other than his name.  As such, he has failed to provide enough information about himself to make a *prima facie* showing of adequacy under Rule 23.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc); *Gross v. AT&T Inc.*, No. 1:19-cv-02892-VEC, ECF No. 53 at 3 (S.D.N.Y. June 24, 2019) (disqualifying movant that "has not provided sufficient information for the Court to determine that it 'will fairly and adequately protect the interests of the class'").  And, Mr. Anklis' adequacy is even further undermined by deficiencies in his own Certification, as he lists 35 transactions in Quad common stock at price points outside of the security's daily trading ranges for the dates at issue.  His motion should be denied.

Like Mr. Anklis, the other movants cannot be appointed lead plaintiff as none of them suffered a sufficient loss to trigger the presumption; their motions should also be denied.

By contrast, the Pension Fund is an institutional investor that suffered a substantial loss, easily meets the Rule 23 requirements, has an impressive track record of service as lead plaintiff and class representative (including that it has recovered over $600 million in settlements for injured class members), and has selected qualified counsel.  The Pension Fund's motion should be granted.

## II.    ARGUMENT

### A.    The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is "the person or group of persons" that (1) "has the largest financial interest in the relief sought by the class," and (2) "otherwise satisfies the requirements of Rule 23."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The *Born* complaint alleges a ***February 22, 2017*** through October 29, 2019 class period while the *Bloom* complaint alleges a ***February 21, 2018*** through October 29, 2019 class period.  *See Born*, ECF No. 1; *Bloom*, ECF No. 1.  Given this disparity, the Court must assess which class period to use to determine financial interest.

4820-4027-6146.v1

| Movant | LIFO Loss in *Born* CP | LIFO Loss in *Anklis* CP |
|---|---|---|
| The Pension Fund | $442,529.05 | $442,529.05 |
| Dennis and Marilynn Born | $320,609.90 | $320,609.90 |
| Westmoreland County Employee Retirement Fund | $308,123.75 | $308,123.75 |
| Hani Anklis | $109,930.49 | $1,011,824.85 |
| Larry Ameling and Sameer Tuffaha | $58,537.95 | $58,537.95 |
| Victoria Bloom (non-movant) | $8,285.28 | $7,967.04 |

In this regard, the PSLRA vests the Court with the discretion to "determin[e]" which investor "has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). And in exercising this discretion, district courts recognize "[t]here is a risk . . . to blindly accepting the longest class period without further inquiry, *as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest*." *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010); *see also Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (recognizing that "simply adopting the most inclusive *class period* might encourage *unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination*"). To guard against such gamesmanship, district courts employ a "plausibility" test to assess the propriety of the alleged class periods. *In re Centerline Holding Co. Sec. Litig.*, 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) (using plausibility test to determine proper class period at lead plaintiff stage); *see also MGIC*, 256 F.R.D. at 625 (adopting "obviously frivolous" test at lead plaintiff stage); *BP*, 758 F. Supp. 2d at 434 (same).[4]

---

[4]   Importantly, courts acknowledge that such assessments are not "binding determinations regarding the proper class period as part of the lead-plaintiff analysis." *MGIC*, 256 F.R.D. at 624;

- 4 -

Here, the Court should look to the *Born* class period when gauging the movants' financial interests because Mr. Anklis' expansion is implausible. As an initial matter, assuming the truth of the facts alleged, the *Bloom* complaint pleads no facts supporting February 22, 2017 – or any date before February 21, 2018 – as a plausible date to begin the class period. *See Centerline*, 2008 WL 1959799, at *3. Specifically, the *Bloom* complaint alleges that defendants made identical false and misleading statements in its Forms 10-K filed with the Securities and Exchange Commission on February 22, 2017 (¶¶19-20), February 21, 2018 (¶¶25-26), and February 20, 2019 (¶¶31-32). The *Bloom* complaint also alleges that defendants made nearly identical false statements in its earnings announcements on February 21, 2017 (¶18), May 2, 2017 (¶21), August 1, 2017 (¶22), October 31, 2017 (¶23), February 21, 2018 (¶24), May 1, 2018 (¶27), July 31, 2018 (¶28), October 31, 2018 (¶29), April 30, 2019 (¶33), and July 30, 2019 (¶34). The *Bloom* complaint alleges that these statements were all false for the same four reasons. *See* ¶35. The *Bloom* complaint relies on a press release dated October 29, 2019, a Buckingham Research analyst report excerpt, and a statement from the October 30, 2019 conference call (*see* ¶¶36-38), none of which provide any facial support to allegations pre-dating February 21, 2018. As such, what is entirely missing from the *Bloom* complaint is **any plausible** allegation that **any** of the statements before February 2018 were materially false and/or misleading **when made**. *See Centerline*, 2008 WL 1959799, at *3 (assessing complaint allegations under plausibility standard and finding no "facts whatsoever that would support an inference that these statements were false when made" in the complaint).

In addition to the perfunctory nature of the pre-February 2018 allegations of the *Bloom* complaint, the facts surrounding the *Bloom* complaint's filing all but confirm its failure to pass the

---

*Centerline*, 2008 WL 1959799, at *4 ("It would be inappropriate at this stage in the litigation to make any determination about the merits of the claims.").

4820-4027-6146.v1

plausibility and "obviously frivolous" tests, *i.e.*, that it was done for the purpose of increasing Mr. Anklis' chances of being appointed lead plaintiff:

   ***First***, Mr. Anklis had virtually no chance of being appointed as lead plaintiff (or class representative) without expanding the class period because he would have been subject to the obvious defense that he ***benefited*** from the inflated stock price.  Indeed, in the original *Born* class period, Mr. Anklis is a "net seller" and a "net gainer" because he sold 33,156 more shares of Quad common stock than he purchased, and received $791,769 more than he spent on his transactions. *See Bausch & Lomb*, 244 F.R.D. at 173-74 ("Courts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices.") (collecting cases); *In re Comdisco Sec. Litig.,* 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (concluding that a net gainer "is totally out of the running for designation as lead plaintiff.").  Accordingly, the fact that Mr. Anklis was ineligible for lead plaintiff appointment without the last minute expansion of the *Born* class period by his counsel is further indicia of the underlying purpose behind the class period expansion.[5]

   ***Second***, apart from ephemerally protecting Mr. Anklis from unique defenses stemming from his status as a "net seller" and a "net gainer," the *Bloom* class period also suspiciously lines up, day-

---

[5]    If the Court narrows the class period at a later time, Mr. Anklis' status as a "net gainer" and "net seller" may preclude any putative class that he seeks to represent from obtaining class certification.  That risk is heightened here (due to Mr. Anklis' class period manipulation), which provides an additional basis to deny his motion because ensuring that the court-appointed lead plaintiff is not subject to unique defenses or disabling defects at the outset of a litigation takes on heightened importance in the wake of two relatively recent Supreme Court decisions: in *CalPERS v. ANZ Securities, Inc.*, __ U.S. __, 137 S. Ct. 2042 (2017), holding that the statute of repose applicable to securities cases is not subject to equitable tolling; and in *China Agritech, Inc. v. Resh*, __ U.S. __, 138 S. Ct. 1800, 1804 (2018), holding that while "*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails," "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations."  *Id.*

4820-4027-6146.v1

for-day, with when Mr. Anklis began trading Quad securities. Indeed, the *Bloom* complaint is perfectly curated to Mr. Anklis' trading, as evidenced by his purchase of nearly 5,000 shares of Quad common stock for $118,412.20 (and options contracts totaling $162,500), all on February 22, 2017 – the very day that the *Bloom* class period begins. ECF No. 24-1 at 3-5. Within five days, Mr. Anklis purchased an additional 48,000 shares of Quad common stock for $1,207,636. *Id*. at 5. In essence, the *Bloom* class period starts on the date that allows Mr. Anklis to bootstrap an additional $1.5 million of purchases into his lead plaintiff financial interest showing.

| Movant | LIFO Loss in *Born* CP | Net Gainer? | Net Seller? | LIFO Loss in *Bloom* CP |
|---|---|---|---|---|
| The Pension Fund | $442,529.05 | | | $442,529.05 |
| The Borns | $320,609.90 | | | $320,609.90 |
| WCERS | $308,123.75 | | | $308,123.75 |
| Mr. Anklis | $109,930.49 | ☑ | ☑ | $683,113.85 (stock) $328,711.00 (options)[6] |
| Mr. Ameling and Mr. Tuffaha | $58,537.95 | | | $58,537.95 |

*Third,* while Mr. Anklis' financial interest is increased ***ten-fold*** by the filing of the *Bloom* class period, Victoria Bloom (whose names appears alone as the sole plaintiff in the *Bloom* complaint and who supposedly directed and authorized the expansion of the class period) is harmed by the filing of her own complaint. That is, her financial interest is ***decreased*** by the expansion of the class period ($7,967.04) as compared to what it is in the *Born* class period ($8,285.28). The fact that Mr. Anklis' counsel expanded the class period ***against Ms. Bloom's best interest*** suggests that

---

[6] Further illustrating the nature of Mr. Anklis' inflated financial interest, all of his claimed options losses stem from contracts that expired on or before January 19, 2018 – before the start date on the *Born* complaint and nearly two years before ***any*** corrective disclosure alleged in either complaint. *See, e.g.*, *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 849 (E.D. Pa. 2018) ("What the plaintiffs lost is what they may recover. Including losses that were incurred before any disclosure could not have been caused by any disclosures and are not recoverable. Thus, those shares are not included in the 'largest financial interest' calculus.").

4820-4027-6146.v1

she either endorsed Mr. Anklis' maneuver or was oblivious to the harm to her caused by her expansion. Either scenario is alarming and undermines the adequacy of both Mr. Anklis and their shared counsel. *See also* n. 7, *infra*.

***Fourth***, the implications of counsel's role in the filing of Ms. Bloom's complaint is called into question by Ms. Bloom's failure to affirm that she reviewed the ***Bloom*** complaint prior to its filing and that she authorized its filing, both of which are explicitly required by the PSLRA. *See* 15 U.S.C. §77z–1(a)(2)(A)(i) (the certification must "state[] that the plaintiff has reviewed the complaint and authorized its filing"). Instead, Ms. Bloom's PSLRA Certification states that "I have reviewed ***a*** complaint filed against Quad/Graphics, Inc. and others for violations of the federal securities laws," entirely omitting the required language that she authorized the filing of the complaint filed with her name on it (and which operates to decrease her financial interest). *Bloom*, ECF No. 1-1 at ¶1.[7]

In sum, while it may very well turn out that the wrongdoing at Quad predated the filing of the *Born* complaint, there are no additional facts offered in the *Bloom* complaint to support that notion. And, when examined in the shadow of the circumstances surrounding the filing of the *Bloom*

---

[7] The PSLRA expressly provides that a class member may conduct discovery into the adequacy of other movants upon the showing of a reasonable basis to do so. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv); *see also In re The Reserve Fund Sec. & Deriv. Litig.*, No. 1:09-md-02011-PGG, slip op. (S.D.N.Y. Aug. 5, 2009) (ordering discovery of competing lead plaintiff movant); *In re Michaels Stores Inc. Sec. Litig.*, No. 3:03-cv-00246-M, slip op. at 2 (N.D. Tex. Oct. 24, 2003) (permitting discovery "to develop and present evidence, if such existed, to rebut the presumption"). Here, Mr. Anklis, Ms. Bloom, and their common lawyers have has raised sufficient concern regarding the circumstances surrounding the class period expansion in the *Bloom* complaint that limited discovery is warranted. *See*, *e.g.*, *Brown v. Biogen IDEC, Inc.*, 2005 U.S. Dist. LEXIS 19350, at *7 (D. Mass. July 26, 2005) (permitting limited discovery to rebut a movant's most adequate plaintiff presumption). At a minimum, the Court should require Mr. Anklis and Ms. Bloom to produce relevant documents and sit for limited depositions regarding the extent of their relationship, and the involvement of their shared counsel in the timing and filing of the *Bloom* complaint.

complaint, what is clear is that the Court should look to the *Born* complaint (and class period) to determine the movant with the largest financial interest in the relief sought by the class.

In the *Born* class period, the Pension Fund has the largest financial interest in the relief sought by the class. Indeed, with losses of over $440,000, the Pension Fund's financial interest is over 30% greater than that of the next closest competing movant and over 400% greater that of Mr. Anklis. Accordingly, absent Mr. Anklis' manipulation of the class period, it is clear that he does not possess the largest financial interest in the litigation, the Pension Fund does.

### B. Independent of Mr. Anklis' Class Period Manipulation, He Is Not a Suitable Lead Plaintiff Candidate

Even if the Court allows Mr. Anklis to take advantage of his claimed financial interest in the *Bloom* class period, he still cannot be afforded the "most adequate plaintiff" presumption because the Court has been provided nothing about him or his ability to satisfy a prima facie showing of adequacy to serve as lead plaintiff in this case.

Unlike the Pension Fund, which is a transparent multiemployer employee benefit plan with a readily accessible website, https://www.aetf.com/pension.asp, and a proven track record of representing classes in securities cases, the record is devoid of any information with which the Court could determine whether Mr. Anklis is able to adequately represent the class. Courts within this District, including this Court, often disqualify such movants. *See AT&T*, No. 1:19-cv-02892-VEC, ECF No. 53 at 3 (disqualifying corporate movant that "has not provided sufficient information for the Court to determine that it 'will fairly and adequately protect the interests of the class.'"); *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (denying lead plaintiff of individual investors who "have provided the Court with little to go on with respect to their alleged capacity to manage this litigation. For example, the Certifications supplied by the Aroras note that they have not served as a lead plaintiff in a securities action within the past three years, and the

- 9 -

4820-4027-6146.v1

Court has no knowledge as to whether the Aroras have ever had any experience serving as lead plaintiff prior to that. . . .  Given this lack of information, the Court is skeptical that the Aroras are equipped to serve as lead plaintiff."); *Ford v. Pro Shares Trust II*, No. 1:19-cv-00886-DLC, ECF No. 125 at 22:6-17 (S.D.N.Y. Apr. 29, 2019) (transcript of lead plaintiff hearing) (rejecting lead plaintiff motion because, *inter alia*: it did not include "typical supporting applications describing the lead plaintiffs that I'm used to seeing").[8]  On the present record, it is therefore impossible for the Court or other movants to even begin to attempt to make the typicality and adequacy determination required by the PSLRA.  Without the timely submission of such basic information, Mr. Anklis has not made the Rule 23 showing required of him and cannot trigger the PSLRA's presumption.

Finally, Mr. Anklis' inability to meet the adequacy requirement is further highlighted by the fact that the pricing information included in his sworn Certification is inaccurate.  In the Schedule A attached to Mr. Anklis' sworn Certification, he indicates that he made certain transactions in Quad securities at certain prices on certain "Trade Dates."  *See* ECF No. 24-1.  This information goes to the heart of the PSLRA's "largest financial interest" inquiry and it is necessary for the dates and

---

[8]     *See In re The Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) (rejecting lead plaintiff motion where the "complete dearth of information accompanying the Wangs' lead plaintiff motion leaves the Court with virtually no basis to assess their adequacy to lead and direct litigation potentially involving thousands of claims for tens, or perhaps hundreds, of millions of dollars"); *Clair v. DeLuca*, 232 F.R.D. 219, 226-27 (W.D. Pa. 2005) (recognizing that "[s]imply making a motion for lead plaintiff status, taken alone, establishes nothing about the movant's adequacy to take on this burdensome task," and finding  "no evidence that [individual lead plaintiff movants] are the type of sophisticated investor who can control a multi-million dollar class action"); *Camp v. Qualcomm Inc.*, 2019 WL 277360, at *2-*3 (S.D. Cal. Jan. 22, 2019) (noting that because the competing movant "failed to include any basic details about himself, including where he lives or who he is specifically in his motion," the court found "it difficult to determine whether Singh would indeed be a typical plaintiff for the class"); *In re Gemstar-TV Guide Int'l, Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (finding that the "record contains no evidence that [the individual movants] are competent to serve as lead plaintiffs" or "to supervise the . . . attorneys representing them"); *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1304-05 (M.D. Fla. 2000) (lack of information concerning plaintiff's "identity, resources, and experience" prevented appointment as lead plaintiff).

4820-4027-6146.v1

prices of each listed transaction to be correct to enable competing movants and courts to determine whether a trade is appropriately within the class period and to determine how to calculate a movant's financial interest under the applicable loss calculation method (*i.e.*, the last-in, first-out (LIFO) method, the first-in, first-out (FIFO) method, etc.). However, the veracity of the information he provides in his sworn Certification is undermined by the fact that the prices for 35 of his claimed transactions on certain "trade dates" fall outside of the daily trading ranges for Quad's common stock:

| Tran Type | Date | Tran Shares | Price Claimed By Mr. Anklis' Certification | Daily Low Price | Daily High Price |
|---|---|---|---|---|---|
| SELL | 3/15/2017 | 8,000 | $25.68 | $23.43 | $24.68 |
| BUY | 8/7/2017 | 600 | $20.56 | $18.91 | $19.40 |
| SELL | 8/7/2017 | 5,000 | $20.57 | $18.91 | $19.40 |
| SELL | 8/7/2017 | 5,000 | $20.58 | $18.91 | $19.40 |
| SELL | 8/7/2017 | 600 | $20.59 | $18.91 | $19.40 |
| SELL | 8/8/2017 | 10,000 | $18.72 | $19.04 | $19.58 |
| BUY | 10/23/2017 | 50,000 | $20.00 | $22.27 | $22.80 |
| BUY | 10/24/2017 | 50,000 | $20.00 | $22.58 | $23.20 |
| BUY | 10/27/2017 | 2,000 | $22.40 | $22.61 | $23.23 |
| SELL | 11/2/2017 | 2,000 | $22.09 | $22.12 | $22.96 |
| BUY | 11/3/2017 | 1,000 | $21.96 | $22.44 | $23.01 |
| BUY | 11/3/2017 | 1,000 | $21.97 | $22.44 | $23.01 |
| BUY | 11/9/2017 | 1,000 | $22.14 | $22.18 | $22.95 |
| BUY | 11/14/2017 | 1,000 | $22.21 | $21.59 | $22.10 |
| BUY | 11/15/2017 | 1,000 | $21.97 | $20.80 | $21.70 |
| BUY | 11/15/2017 | 1,000 | $22.00 | $20.80 | $21.70 |
| BUY | 11/15/2017 | 1,000 | $21.92 | $20.80 | $21.70 |
| SELL | 11/20/2017 | 94 | $21.18 | $21.28 | $21.85 |
| SELL | 11/20/2017 | 1,906 | $21.00 | $21.28 | $21.85 |
| SELL | 11/30/2017 | 2,000 | $21.65 | $22.01 | $22.69 |
| BUY | 2/6/2018 | 1,000 | $21.31 | $19.62 | $20.79 |
| BUY | 2/6/2018 | 1,000 | $21.29 | $19.62 | $20.79 |
| BUY | 2/7/2018 | 1,000 | $20.39 | $20.53 | $21.02 |
| SELL | 2/7/2018 | 1,243 | $21.21 | $20.53 | $21.02 |
| SELL | 2/7/2018 | 757 | $21.18 | $20.53 | $21.02 |
| SELL | 2/13/2018 | 2,700 | $20.12 | $20.21 | $20.65 |
| SELL | 2/13/2018 | 7,000 | $20.12 | $20.21 | $20.65 |

- 11 -

| Tran Type | Date | Tran Shares | Price Claimed By Mr. Anklis' Certification | Daily Low Price | Daily High Price |
|---|---|---|---|---|---|
| SELL | 2/13/2018 | 100 | $20.15 | $20.21 | $20.65 |
| SELL | 2/13/2018 | 9,900 | $20.11 | $20.21 | $20.65 |
| SELL | 2/23/2018 | 4,135 | $28.00 | $29.00 | $31.14 |
| SELL | 2/23/2018 | 3,612 | $27.95 | $29.00 | $31.14 |
| SELL | 2/23/2018 | 8,243 | $27.80 | $29.00 | $31.14 |
| SELL | 2/23/2018 | 7,010 | $27.97 | $29.00 | $31.14 |
| SELL | 2/23/2018 | 5,000 | $27.98 | $29.00 | $31.14 |
| SELL | 2/27/2018 | 250 | $30.54 | $26.75 | $28.73 |

*See* ECF No 24-1; *see also* Exhibit A attached hereto.

Mr. Anklis' inability to file a sworn certification that accurately reflects the dates on which he made his transactions in the securities at issue is – at best – indicia that he lacks the requisite sophistication and care to be placed in a position of trust as a fiduciary to absent class members.[9] *See generally Diebold Nixdorf*, 2019 WL 5587148, at *6 (denying motion by movant with larger financial interest and concluding that the "Court is disquieted by the errors contained in [movant's] original submissions" which "took the [movant] nearly two weeks [to correct]" because the certification "struck at the core of the PSLRA's lead plaintiff inquiry"); *Li Hong Cheng v. Canada Goose Holdings Inc.*, 2019 WL 6617981, at *6 n.7 (S.D.N.Y. Dec. 5, 2019) ("Even if [movant] had the largest financial interest in this action, I find that '[t]he certification errors in [movant's] submissions "militate against appointment and render [him] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement."'"); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (disqualifying movant, finding that "[a]lthough Meitav submits that this clerical error was a 'minor defect[ ],' . . . this error 'nonetheless speak[s] to a level of

---

9    Even worse, it appears that Mr. Anklis is aware that he is providing inaccurate data as his Certification contains a disclaimer stating that the "Trade Date" column for his Scottrade account may not reflect the correct trade dates.  *See* ECF No. 24-1 at 9.

4820-4027-6146.v1

carelessness,' and causes me 'to doubt whether [Meitav] possesses the necessary adequacy and sophistication to be lead plaintiff'"); *Bhojwani v. Pistiolis*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (finding that discrepancies in certification "indicate[] a certain carelessness about detail that undermines the adequacy of [the movant] as a lead plaintiff"); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019) (finding that "[s]worn declarations are integral to the PSLRA process" and "the errors in Erenoglu's sworn statements amount to a substantial degree of carelessness and raise doubt as to whether he will fairly and adequately represent the best interests of the class" "[p]articularly given that these errors were made at the outset of the case").

### C. The Presumption of "Most Adequate Plaintiff" Which Lies in Favor of the Pension Fund Cannot Be Rebutted

Aside from having the largest financial interest, the PSLRA requires that, to be designated the presumptively most adequate plaintiff, the Pension Fund must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc). There is no question that the Pension Fund satisfies this requirement. *See* ECF No. 14 at 4-6. Founded in 1968, the Pension Fund is a multiemployer employee pension plan with approximately $1.5 billion in assets under management overseen for the benefit of over 10,000 participants and beneficiaries. *Id.* at 5. Unlike Mr. Anklis about whom nothing is known, the Pension Plan has a proven track record of successfully discharging lead plaintiff and fiduciary duties on behalf of a class. *See, e.g.*, *Alaska Elec. Pension Fund. v. Pharmacia Corp.*, No. 3:03-cv-01519-AET-TJB, ECF No. 403 (D.N.J. Jan. 30, 2013) (Pension Fund obtained final approval of $164 million settlement as lead plaintiff in PSLRA case); *Alaska Elec. Pension Fund v. Bank of Am., N.A.*, 2018 WL 8581152, at *2 (S.D.N.Y. Nov. 13, 2018) (Pension Fund, as class representative, obtaining final approval of settlements against 14 of the world's largest banks, totaling $504.5 million, in long-running and complex antitrust class action). The Pension Fund "is the sort of lead plaintiff envisioned by Congress in its enactment of the

- 13 -

PSLRA – a sophisticated institutional investor with a substantial financial interest in the litigation." *City of Riviera Beach Gen. Emps.' Ret. Sys. v. Macquarie Infrastructure Corp.*, 2019 WL 364570, at \*6 (S.D.N.Y. Jan. 30, 2019) (citing H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733); *Juliar v. SunOpta Inc.*, 2009 WL 1955237, at \*2 (S.D.N.Y. Jan. 30, 2009) ("Congress enacted the PSLRA in 1995 with the consideration that the best way to prevent lawyer-driven litigation was to encourage institutional investors to serve as lead plaintiffs."); *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 294 (S.D.N.Y. 2010) ("The drafters of the PSLRA sought to reduce the influence of lawyers on class action securities suits by weighting the determination of lead plaintiff in favor of large institutional investors.").[10]  Because the Pension Fund clearly has the largest financial interest and satisfies Rule 23's requirements, the Pension Fund is presumptively the "most adequate plaintiff."

### D. The Remaining Movants Do Not Qualify for the PSLRA's Presumption

The remaining movants claim a smaller loss than the Pension Fund.  Consequently, the Court

---

[10]     Mr. Anklis' class period manipulation illustrates the rationale behind one of the PSLRA's primary goals: the appointment of institutional investors as lead plaintiff.  "'[M]any courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs.'" *See Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM, Inc.*, 2015 U.S. Dist. LEXIS 153202, at \*8 (S.D.N.Y. Nov. 12, 2015); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) (recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs"); *Malasky v. IAC/InteractiveCorp*, 2004 U.S. Dist. LEXIS 25832, at \*12-\*14 (S.D.N.Y. Dec. 21, 2004) (discussing the PSLRA's preference for institutional investors); *Endo*, 316 F. Supp. 3d at 847 (where individual investors alleged a larger financial interest, court concluded that the "institutional investor preference outweighs the presumptive lead plaintiff rule").  This preference has been determinative in other cases, even when an institutional investor has a slightly lower loss than another potential lead plaintiff.  *See, e.g.*, *Randall v. Fifth St. Fin. Corp.*, 2016 U.S. Dist. LEXIS 15719, at \*10 (S.D.N.Y. Feb. 1, 2016) ("The Court bases its decision, then, on the Congressional preference for institutional lead plaintiffs in private securities class actions."); *SunOpta*, 2009 WL 1955237, at \*2 (The difference in losses "does not overcome a presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs.") (citing *Police & Fire Ret. Sys. v. SafeNet, Inc.*, 2007 U.S. Dist. LEXIS 97959, at \*6 (S.D.N.Y. Feb. 21, 2007)).

4820-4027-6146.v1

should not consider their motions unless the presumption in favor of appointment of the Pension Fund as Lead Plaintiff is rebutted. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cit. 2001) (the presumption "'may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class'").

Here, because the Pension Fund is willing to serve and satisfies Rule 23's requirements, the competing motions should be denied.

## III. CONCLUSION

Mr. Anklis cannot trigger the PSLRA's most adequate plaintiff presumption because his claimed losses are the result of class period manipulation and his ability to serve as a fiduciary for the putative class is further belied by his status as an unknown individual with defects in his Certification. The remaining competing movants also cannot trigger the presumption as they claim a smaller loss than the Pension Fund. The Pension Fund has satisfied each of the PSLRA's requirements for appointment as Lead Plaintiff and approval of its selection of counsel. The presumption which lies in favor of the Pension Fund cannot be rebutted. Accordingly, the Pension Fund respectfully requests that the Court grant its motion.

DATED:  January 24, 2020　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　ROBBINS GELLER RUDMAN
　　　　　　　　　　　　　　　　 & DOWD LLP
　　　　　　　　　　　　　　　　SAMUEL H. RUDMAN
　　　　　　　　　　　　　　　　DAVID A. ROSENFELD
　　　　　　　　　　　　　　　　VINCENT M. SERRA


　　　　　　　　　　　　　　　　　*s/ David A. Rosenfeld*
　　　　　　　　　　　　　　　　DAVID A. ROSENFELD

- 15 -

4820-4027-6146.v1

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
DANIELLE S. MYERS
MICHAEL ALBERT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead
Plaintiff

- 16 -

4820-4027-6146.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 24, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  drosenfeld@rgrdlaw.com

## Mailing Information for a Case 1:19-cv-10376-VEC Born et al v. Quad/Graphics, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Javier Bleichmar**
  jbleichmar@bfalaw.com

- **Eric H. Gibbs**
  ehg@classlawgroup.com,dks@girardgibbs.com,jiv@girardgibbs.com,1031352420@filings.docketbird.com,smg@girardgibbs.com

- **Bryan B. House**
  bhouse@foley.com,sulness@foley.com

- **Phillip C. Kim**
  pkim@rosenlegal.com

- **Gregory Bradley Linkh**
  glinkh@glancylaw.com,info@glancylaw.com,greg-linkh-2000@ecf.pacerpro.com

- **Lesley Frank Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com,clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Robert Allen Scher**
  rscher@foley.com,ebeer@foley.com,smorano@foley.com,docketflow@foley.com

- **Ross Mitchell Shikowitz**
  rshikowitz@bfalaw.com

- **David Stein**
  ds@classlawgroup.com,7316370420@filings.docketbird.com

- **Jason Allen Zweig**
  jasonz@hbsslaw.com,lisal@hbsslaw.com,ceciliah@hbsslaw.com,nicolleg@hbsslaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)