**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DENNIS BORN and MARILYNN BORN, Individually and on Behalf of all Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> QUAD/GRAPHICS, INC., J. JOEL QUADRACCI, and DAVID J. HONAN, <br><br> Defendants. | Civil Action No. 1:19-cv-10376-VEC <br><br> <u>CLASS ACTION</u> <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF HANI ANKLIS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF COUNSEL**

Lead plaintiff movant Anklis respectfully submits this limited reply to refute two erroneous assertions made by the Alaska Electrical Pension Fund for the first time in its opposition brief (ECF No. 43, "AEPF Opp.") that fundamentally mischaracterize Anklis' arguments and cast untrue aspersions concerning his motion.

### I.     The allegations supporting an expanded class period are plausible and in no way reflect "gamesmanship"

AEPF makes the unsupported accusation that the expansion of the class period in *Bloom* was an improper "maneuver" that amounts to "gamesmanship." AEPF Opp. at 2, 4. AEPF bases its argument primarily on the fact that Anklis suffered a substantially larger loss of $1 million in the expanded class period, compared to $110,000 during the shorter period alleged in *Born*. AEPF Opp. at 7. But as Anklis explained in his last brief, there is a good basis to believe that Defendants' fraudulent conduct started earlier than the *Born* class period.[1] *See* ECF No. 41 at 6-7. For that reason, it *is* in Anklis' interest—and in many Quad investors' interests—to ensure that this litigation covers the full period during which the fraud persisted. A longer class period, in other words, will substantially increase not only Anklis' potential recovery, but many other class members' as well. Accordingly, expanding the class period is not gamesmanship. It is zealous advocacy on behalf of his own and the class' interests. This is why virtually every court to consider the issue has adopted the broadest potential class period at the lead plaintiff stage of the litigation,

---

[1] AEPF asserts that *Bloom* "fails to allege a single fact (beyond what is contained in the *Born* complaint) suggesting defendants' wrongdoing dated back to February 22, 2017." AEPF Opp. at 2. AEPF is off-base and wrong. Indeed, it is the very facts alleged in *Born* that demonstrate that it is plausible that the fraud perpetrated by Quad began before February 22, 2018. Specifically, despite starting the class period on February 22, 2018, *Born* alleges that Quad was understating the pricing pressure and overstating the demand experienced by its printing business "in recent years," *see Born* ECF No. 1 at ¶21, meaning at least as early as 2017. Accordingly, at least three of the five reasons *Born* alleges the statements are false (that the Company was (i) underperforming (ii) likely to divest its book business; and (iii) unreasonably vulnerable to decreases in market prices) relate back to 2017. *Id.* at ¶31. More importantly, there is no reason alleged in *Born* explaining why the fraud began in 2018 rather than 2017. It is just as plausible based on *Born* and *Bloom* that the fraud commenced in 2017 as in 2018.

recognizing that a broader period "***encompasses more potential class members and damages***."

*Hom v. Vale,* 2016 WL 880201, at \*4 (S.D.N.Y. Mar. 7, 2016) (emphasis added); *see also* ECF No. 41 at 3, 5 n.4.

AEPF relatedly claims that the investor who filed the expanded class period complaint, Valerie Bloom, did so against her own interests. *See* AEPF Opp. at 7-8. AEPF posits that Bloom's LIFO loss is $7,967 in the longer period compared to $8,285 in the shorter period. But AEPF performs the wrong analysis. In reality, Bloom, like many proposed class members, purchased shares during the longer class period that are not covered by the narrower period in *Born*. *See Bloom*, ECF No. 1-1 (purchases as early as March 2017). Excluding those shares from the case risks reducing Bloom's ultimate recovery.

What's more, Bloom is not seeking lead plaintiff appointment and her LIFO loss is not the appropriate measure of what she will recover at the end of the litigation. Rather, a more appropriate analysis to determine what Bloom will recover removes gains and losses caused by sales of stock prior to any corrective disclosure ("*Dura* loss"), an approach that AEPF itself advocates in its brief. AEPF Opp. at 7 n.6.[2]

Application of AEPF's own methodology demonstrates that it is wrong to contend that Bloom acted against her interests when filing the complaint asserting the broader class period. Indeed, Bloom's *Dura* loss is the same in both the longer and shorter periods ($8,806), and she would be able to recover on additional shares that she purchased in the broader period. *See* Bleichmar Decl. Ex. A. In other words, under AEPF's own argument, Bloom had good reason to

---

[2] *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (recoverable losses in securities fraud actions include only those proximately caused by a fraud); *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 499 (D. Conn. 2017) ("one's financial interest in the litigation can only consist of what one can recover in that action"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) ("If a loss is not Dura eligible then it is not redressable through the putative class action.").

2

file a complaint that expands the class period, and doing so is in her interest. It is also in the interest of the many other proposed class members who bought shares before the start of the narrower class period. Again, this expansion of the class period is not "maneuvering"; it is zealous advocacy that benefits Anklis, Bloom, and the class.

While AEPF accuses Anklis of "gamesmanship," it claims the same loss of $442,529 in both periods, although it has not submitted its trading data for the longer period. AEPF Opp. at 7. Accordingly, there is no reason for AEPF to so vehemently and feverishly oppose expanding the class period, especially when the larger period undisputedly allows more class members to recover. The case law AEPF cites about lawyer driven litigation applies—if at all—to itself. AEPF Opp. at 14.

## II. Anklis' loss is accurate

AEPF also wrongly argues that Anklis' loss is incorrect and unreliable because the prices of his trades are inaccurate. AEPF Opp. at 10-11. But AEPF vastly overstates its argument and is wrong. ***The prices, quantity, and dollar amount for each trade made by Anklis are correct, and his loss is 100% accurate***. With respect to trades from one broker, however, the date of the transaction reflected on Anklis' certification is the settlement date instead of the trade date because that is how the broker provided the information. The trade date is the day on which the transaction was executed in the exchange, while the settlement date reflects when the purchaser transfers the cash to the seller who in return tenders the security. The settlement date is generally three trading days after the trade date, although in some instances it can vary by a day or two depending on holidays and other factors.

In any event, ***this is immaterial here***. The transactions AEPF flagged (AEPF Opp. at 11-12) occurred between March 15, 2017, and February 27, 2018, all within the alleged *Bloom* class

3

period of February 22, 2017 to October 29, 2019, regardless of whether the date in the certification refers to the trade or settlement. *See Bloom* Complaint, ECF Nos. 1, 1-1. Accordingly, there is no question these transactions occurred within the class period, which is all that the PSLRA certification requires: to "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(iv). Minor discrepancies as to whether a date pertains to the trade or settlement date do not undermine Anklis' adequacy. *See Miller v. Dyadic Intern.*, 2008 WL 2465286, at *6 n.5 (S.D. Fla. Apr. 18, 2008) (minor errors such as slightly inaccurate dates or prices, and prices that included a broker commission were immaterial because movant still had the largest financial interest); *Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) (minor miscalculations of losses were not a legitimate basis for disqualification for lead plaintiff appointment).[3] This is particularly true here, where Anklis asserts a loss that is twice that of AEPF.

Critically, Anklis acknowledged this in his certification filed with his initial lead plaintiff motion and was fully transparent, explaining that his Scottrade account was transferred to TD Ameritrade in March 2018 after TD bought Scottrade, and that Scottrade's old trading records provided the settlement date. *See* ECF No. 24-1 at 9 n.1. ***While Anklis' certification satisfies the PSLRA, to further demonstrate his transparency and adequacy, he provides with this brief an updated certification that reflects the trade date for each trade.*** *See* Bleichmar Decl. Ex. B.

Far from being unreliable, Anklis has been diligent, candid, and demonstrated his willingness and ability to serve as a fiduciary for the class. Anklis respectfully requests that the Court grant his motion in full.

---

[3] Likewise, AEPF's assertion that a simple typo in Bloom's PSLRA Certification is evidence of improper "gamesmanship" is simply wrong. AEPF Opp. at 2. *See e.g., Alibaba*, 102 F. Supp. 3d at 538-39 ("The failure to correct obvious or inconsequential clerical errors … simply is not the type of adequacy issue that would divert the fact finders' attention from the merits and thus infect the claims of the class as a whole.").

Dated:  February 11, 2020

Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

/s/ Javier Bleichmar
Javier Bleichmar
Ross Shikowitz
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960
jbleichmar@bfalaw.com
rshikowitz@bfalaw.com

*Local Counsel for Proposed Lead Plaintiff
Hani Anklis and Proposed Local Counsel
for the Class*

**GIBBS LAW GROUP LLP**
Eric H. Gibbs (*pro hac vice)*
David Stein (*pro hac vice*)
505 14th Street, Suite 1110
Oakland, CA 94612-1406
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com

*Counsel for Proposed Lead Plaintiff Hani
Anklis and Proposed Lead Counsel for the
Class*

5

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the registered participants.  Executed on February 11, 2020.

/s/ *Javier Bleichmar*
Javier Bleichmar

6