USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/2/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
DENNIS BORN, MARILYNN BORN, and :
VALERIE BLOOM, individually and on behalf of all :
others similarly situated, :
 :
 : 19-CV-10376 (VEC)
                              Plaintiffs, :
 : ORDER APPOINTING
            -against- : LEAD PLAINTIFF AND
 : APPROVING SELECTION
QUAD/GRAPHICS, INC., J. JOEL QUADRACCI, : OF LEAD COUNSEL
and DAVID J. JONAN, :
 :
                              Defendants. :
------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

This is a consolidated putative securities class action alleging violations of the Securities and Exchange Act and related regulations. In its January 10, 2020, order consolidating *Born v. Quad/Graphics, Inc.*, No. 19-CV-10376, with *Bloom v. Quad/Graphics, Inc.*, No. 19-CV-11860, for all purposes, this Court ordered that papers bearing on the appointment of a lead plaintiff and lead counsel under the Private Securities Litigation Reform Act of 1995 be submitted by January 24, 2020. *See* Dkt. 31. The Court received submissions from five lead plaintiff applicants. After ordering additional briefing, two submissions were withdrawn. *See* Dkts. 38–39 (withdrawing Motion of Westmoreland County Employee Retirement Fund, Dkt. 9, and Motion of Quad/Graphics, Inc. Investor Group, Dkt. 21).

Now before the Court are motions by the Alaska Electrical Pension Fund ("Alaska Pension"), Hani Anklis, and Dennis and Marilynn Born (together, the "Borns") to be appointed lead plaintiff and to approve selection of lead counsel. *See* Dkts. 13, 19, and 25. For the following reasons, the Court GRANTS Alaska Pension's motion, appoints it lead plaintiff, and

approves its selection of Robbins Geller Rudman & Dowd LLP as lead counsel for the consolidated putative class. The competing motions are DENIED.

## DISCUSSION

15 U.S.C § 78u-4(a)(3)(B)(i) requires this Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." In making this determination, the Court must presume "that the most adequate plaintiff . . . is the person" that (1) "has either filed the complaint or made a motion in response to a notice" publicly advertising the filing of the action; (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I). As to this last factor, a would-be lead plaintiff must make "only a prima facie showing that the requirements of Rule 23 are met," and the Court need only consider Rule 23's typicality and adequacy-of-representation requirements. *Elstein v. Net1 UEPS Techs., Inc.*, No. 13-CV-9100, 2014 WL 3687277, at *7 (S.D.N.Y. July 23, 2014); *see also, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[T]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination of lead plaintiff under the PSLRA. . . . Further, at this stage of litigation, only a preliminary showing of typicality and adequacy is required." (citations and alterations omitted)).

To determine which applicant for lead plaintiff has the largest financial interest in the relief sought, courts generally rely upon the four factors set out in *Lax v. First Merchants Acceptance Corp.*, No. 97-CV-2715, 1997 WL 461036 (N.D. Ill. August 11, 1997). *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475 (S.D.N.Y. 2011). Those four factors are: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) total net

funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Id.* Those factors do not, however, carry equal weight. The fourth factor, loss, is well-established to be the "critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures." *Id.* at 479 (citation omitted).

Rule 23's typicality requirement is, in turn, satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Elstein*, 2014 WL 3687277, at *7 (quotation omitted). Rule 23's adequacy requirement is satisfied when: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007)).

Applying Section 78u-4(a)(3)(B)(iii)(I)'s three factors, the Court finds that Alaska Pension is presumed to be the most adequate plaintiff.

First, Alaska Pension moved to be appointed lead plaintiff in response to notices publicizing the filing of the *Born* action, *see* Dkt. 15 (Decl. in Supp. of Mot. for Appointment) Ex. A (Business Wire Notice), and did so within ninety days of publication, *see* Dkt. 13 (Mot. for Appointment); *see also* 15 U.S.C § 78u-4(a)(3)(B)(i) (requiring lead-plaintiff motions to be filed within ninety days of publication).

Second, the Court finds that Alaska Pension has the largest financial stake in the putative class's recovery. There is no material dispute over the applicants' losses, only over the relevant class period the Court should use to assess those losses.[1] The *Bloom* complaint alleges a class

---

[1] The Borns argue that this Court should use net shares retained ("NSR") instead of loss to assess an applicant's financial interest, relying on *Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162, 2016 WL 1337305

period (February 22, 2017, to October 29, 2019) that begins one year before the class alleged in the *Born* complaint (February 21, 2018, to October 29, 2019). *Compare* Dkt. 1 *with Bloom*, No. 19-CV-11860, Dkt 1. Under *Bloom*'s alleged class period, Anklis would have the largest loss; under *Born*'s, that badge belongs to Alaska Pension.[2]

| Measure | Alaska Pension | Anklis | The Borns |
|---|---|---|---|
| Loss (*Bloom* Class Period) | $442,500 | $1,012,000 | $320,000 |
| Loss (*Born* Class Period) | $442,500 | $110,000 | $320,000 |

Although the applicants have traded numerous barbs in their motion papers, the Court resolves the issue on a narrow set of considerations. First, there is no allegation in either complaint that investors were misled as early as February 2018, let alone February 2017. Thus, the shorter class period is, on its face, as plausible, if not more plausible, than the longer class period. The Court need not go further because "[a]t this stage in the litigation, it would be inappropriate for the Court to determine the earliest possible date on which investors were deceived." *In re Centerline Holding Co. Sec. Litig.*, No. 08-CV-1026, 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008). Second, the Court is exceedingly concerned with Anklis's fitness to represent a class of investors should the *Born* class period prevail. In addition to losing $332,500 less than Alaska Pension, Anklis is a "net seller" and "net gainer" during the *Born* class period, meaning that he sold more shares than he purchased and earned more in proceeds than he

---

(S.D.N.Y. Apr. 5, 2016). *See* Dkt. 40 (Borns' Mem. of Law in Opp.) at 6. That reliance is misplaced. NSR can act as a tiebreaker when the loss factor is a wash between applicants, as was the case in *Cortina*, *see id.* at *2, but here there is no dispute that Alaska Pension's loss was approximately $120,000 more than the Borns' loss. The Court declines to adopt this unconventional practice absent circumstances where a tiebreaker is necessary.

[2] The Court adopts the parties' losses calculated under the last-in-first-out ("LIFO") method. *See Richman*, 274 F.R.D. at 476 ("Southern District of New York courts have a very strong preference for the LIFO method in calculating loss."); *Hom v. Vale, S.A.*, No. 15-CV-9539, 2016 WL 880201, at *3 (S.D.N.Y. Mar. 7, 2016) (comparing the LIFO and [first-in-first-out] methods and opting for the LIFO method).

spent—a fact Anklis does not contest. *See* Dkt. 43 (Alaska Pension's Mem. of Law in Opp.) at 6. That status effectively disqualifies Anklis from representing a class defined by the shorter, *Born* period. *See In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) (collecting cases and noting that "[c]ourts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices").[3] Alaska Pension, on the other hand, comes with no such risks, as it is neither a net gainer nor a net seller, and its loss is substantial, if not the largest, under either proposed class period.

As for the third factor, Alaska Pension satisfies Rule 23's typicality and adequacy requirements. As a Quad/Graphics, Inc. shareholder during the overlapping *Bloom* and *Born* class periods—Alaska Pension alleges that it suffered a loss because of its reasonable reliance on allegedly material false or misleading statements or omissions by Defendants. *See* Dkt. 14 (Mem. of Law in Supp. of Alaska Pension's Mot. for Appointment) at 5. The theories advanced in the *Bloom* and *Born* complaints being identical, the Court finds that Alaska Pension advances claims typical of the putative consolidated class. Alaska Pension has also shown that it will adequately protect the putative class's interests: its selected counsel is qualified, experienced, and able to conduct this litigation; the Court perceives no conflict between Alaska Pension and the other members of the putative class; and Alaska Pension's substantial stake in any recovery by the putative class ensures it will vigorously advocate on the class's behalf. *Elstein*, 2014 WL 3687277, at *7 (citing *Kaplan*, 240 F.R.D. at 94). Alaska Pension is therefore presumed to be the most adequate plaintiff to lead the class. *See* 15 U.S.C § 78u-4(a)(3)(B)(iii)(I). And because

---

[3] The Court notes that this Order should not be read as mandating the *Born* class period. Plaintiffs may choose to advance a longer or shorter class period in the Amended Consolidated Complaint, *see infra*, or, ultimately, on a motion for class certification.

no member of the putative class has offered any evidence to rebut that presumption, the Court must appoint Alaska Pension as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(iii)(II) (providing that lead-plaintiff presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class").

The Court next approves Alaska Pension's request that the Court approve its selection of Robbins Geller Rudman & Dowd LLP as lead counsel. "[T]he PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval." *Kaplan*, 240 F.R.D. at 96 (citing 15 U.S.C. § 78u-4(a)(3)(B)(v)). The Court has reviewed and approved Robbins Geller before, *see* Order at 4, *Samit v. CBS Corp.*, No. 18-cv-7796 (S.D.N.Y. Nov. 30, 2018), and continues to agree "with other courts in this district that Robbins Geller is 'qualified, experienced, and able to conduct the litigation,'" *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 180–81 (S.D.N.Y. 2012) (quoting *Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 267 (S.D.N.Y. 2009)).

## CONCLUSION

For the foregoing reasons, Alaska Pension's motion to be appointed lead plaintiff and to approve its selection of lead counsel (Dkt. 13) is GRANTED. Alaska Electrical Pension Fund is appointed lead plaintiff of this consolidated putative class action, *see* 15 U.S.C § 78u-4(a)(3)(B)(i), (iii), and its selection of Robbins Geller Rudman & Dowd LLP to serve as lead counsel is approved, *see id.* § 78u-4(a)(3)(B)(v).

No later than **April 1, 2020**, Lead Plaintiff shall file an Amended Consolidated Complaint. The parties must meet and confer on a schedule to brief Defendants' motion to

dismiss, if any, and propose a schedule to the Court not later than **April 15, 2020**. If Defendants move to dismiss the Amended Consolidated Complaint, Plaintiffs may either file a Second Amended Consolidated Complaint or respond to the motion to dismiss. All discovery is stayed pending resolution of any motion to dismiss.

If Defendants instead elect to answer the Amended Consolidated Complaint, counsel for all parties are directed to appear before the undersigned for an Initial Pretrial Conference, *see* Fed. R. Civ. P. 16, on **May 15, 2020, at 10:00 a.m.** in Courtroom 443 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, 10007. No later than **May 7, 2020**, the parties must submit a joint letter of no more than five pages addressing the following in separate paragraphs: (1) a brief description of the case, including the factual and legal bases for the claim(s) and defense(s); (2) any contemplated motions; and (3) the prospect for settlement. The parties must append to their joint letter a jointly proposed Civil Case Management Plan and Scheduling Order. The undersigned's Individual Practices in Civil Cases and a template Civil Case Management Plan may be found on the Court's website.

The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 9, 13, 19, 21, 25 in *Born*, No. 19-CV-10376.

**SO ORDERED.**

Date: **March 2, 2020**  
New York, New York

                                                  **VALERIE CAPRONI**  
                                                **United States District Judge**