# EXHIBIT W

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 1:19-cv-04153 |
| QUAD/GRAPHICS, INC., *et al.*, | Hon. Charles R. Norgle, Sr. |
| *Defendants*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**JOINT MOTION FOR ENTRY OF PROPOSED SCHEDULING ORDER**

Quad/Graphics, Inc. ("Quad"), QLC Merger Sub, Inc. ("QLC"), and LSC Communications, Inc. ("LSC," and together with Quad and QLC, "Defendants") bring *Defendants' Joint Motion for Entry of Proposed Scheduling Order* (the "Motion") to request that the Court enter a scheduling order that would allow the Court to reach a decision on the merits of Plaintiff's (the "Division's") claim prior to the October 30, 2019 Expiration Date specified in the Merger Agreement between Quad and LSC. Such an order would permit this case to proceed on a schedule similar to the schedules in other recent merger challenges.

Following the June 28, 2019 hearing, Defendants sent the Division a proposed scheduling order that laid out the dates for pre-trial preparations and a trial on the merits of the Division's request to enjoin Quad's acquisition of LSC. Defendants proposed to begin a six-day trial on October 1, 2019 (103 days after the Division filed the Complaint and 29 days prior to the Expiration Date in the Merger Agreement). To streamline the trial and give the Court a clear roadmap of the expected trial evidence, Defendants proposed that (i) the direct testimony of trial witnesses be submitted to the Court in writing before trial began, (ii) the parties file proposed

findings of fact, including citations to the relevant written direct testimony, in advance of trial, rather than after, and (iii) post-trial briefs would be filed one week after the trial concluded. The Division responded with a proposal to begin trial on November 12, 2019 (145 days after the filing of the Complaint and 13 days *after* the October 30, 2019 Expiration Date in the Merger Agreement), which would mean that the Division may essentially win this case by delaying review of the merits of their claim, forcing Defendants to forfeit.[1] Moreover, the Division has informed Defendants that it (i) intends to request up to 10 trial days *just to present its case-in-chief*, (ii) does not agree that written direct testimony can be used as a vehicle to expedite the bench trial, and

---

[1] The Division also proposed an alternative schedule that would include a preliminary injunction motion that would be decided either on the papers or, "if ordered by the Court," after a one-day hearing on August 8, 2019, followed by a trial on the merits commencing December 9, 2019. This, too, is a non-starter because it would deny Defendants a meaningful evidentiary hearing on several, genuine issues of material fact, including but not limited to: (i) the adequacy of the Division's alleged market definitions; (ii) the competitive significance of Defendants' many domestic and foreign competitors; (iii) the ease of expansion and repositioning in the print industry; and (iv) the pro-competitive synergies and efficiencies that Quad expects to achieve from the transaction. *See United States* v. *Bd. of Educ. of City of Chi.*, 11 F.3d 668, 672 (7th Cir. 1993) (district court abused discretion by granting a preliminary injunction without an evidentiary hearing); *Medeco Sec. Locks, Inc.* v. *Swiderek*, 680 F.2d 37, 38 (7th Cir. 1981) ("It is well established that, in general, a motion for a preliminary injunction should not be resolved on the basis of affidavits alone. Normally, an evidentiary hearing is required to decide credibility issues."); *Zamecnik* v. *Indian Prairie Sch. Dist. No. 204 Bd. of Educ.*, 619 F. Supp. 2d 517, 522 (N.D. Ill. 2007) ("Ordinarily, when material factual issues are in dispute, a motion for preliminary injunction should not be resolved, particularly in favor of granting relief, without first providing an opportunity for the presentation of live testimony."). Preliminary injunction hearings in merger challenges brought by the Division or the Federal Trade Commission routinely involve evidentiary hearings. *See, e.g.*, *FTC* v. *Elders Grain, Inc.*, 868 F.2d 901, 903 (7th Cir. 1989); *FTC* v. *OSF Healthcare Sys.*, 852 F. Supp. 2d 1069, 1072 (N.D. Ill. 2012); *United States* v. *UPM-Kymmene Oyj*, 2003 WL 21781902 (N.D. Ill. July 25, 2003); *FTC.* v. *Great Lakes Chem. Corp.*, 528 F. Supp. 84, 86 (N.D. Ill. 1981).

Moreover, the Division's proposal would allow Defendants just one week to respond to the Division's preliminary injunction motion. While the Division has had eight months to conduct discovery from Defendants and third parties using its compulsory process powers, and Defendants have made several presentations and written submissions to the Division setting forth their views of the industry and competition, the Division has not provided Defendants any evidence, economic analysis, or legal analysis explaining the Division's grounds for challenging this transaction.

(iii) anticipates needing at least two weeks after trial concludes to submit post-trial briefs. Given the Court's statement at the June 28, 2019 hearing that it could devote three or four days a week to the trial, and the intervention of the Thanksgiving, Christmas, and New Year's Day holidays, the Division's contemplated schedule would mean that post-trial briefing likely would not be completed until the end of January 2020. While the Division has said it does not intend to kill Quad's and LSC's merger by means of delay, that would be the inevitable result of the Division's proposed schedule.

Although Defendants have engaged in good-faith efforts to reach an agreement on a schedule, the Division has taken the position that it cannot prepare for and conduct a trial on an expedited basis. The Parties thus remain at an impasse on a proposed trial date and other scheduling matters. Defendants respectfully request that the Court enter Defendants' Proposed Scheduling Order, setting a trial on the merits of the Division's request to permanently enjoin Quad's acquisition of LSC to begin on or about **October 1, 2019**, or as soon thereafter as possible for the Court. Defendants believe the trial need only consume six to ten court days, evenly divided between the parties, and could conclude no later than the week of October 15, 2019. Defendants' Proposed Scheduling Order (*see* Exhibit A) and Defendants' Proposed Case Management Order (*see* Exhibit B) provide a detailed roadmap of how the Parties could use their resources efficiently to reach the October 1, 2019 trial date.

Defendants will face substantial harm if a trial is not held before the October 30, 2019 Expiration Date in their Merger Agreement. If the Expiration Date comes and goes without a trial on the merits of the Division's challenge, the merger of Quad and LSC may well fall apart without the Division ever having to prove to an independent trier of fact that the merger would substantially lessen competition. Defendants are not requesting extraordinary relief, only a fair chance to rebut

3

the Division's assertion that the merger will lessen competition in four ill-defined markets. Merger challenges are frequently heard on an expedited basis, and Defendants' Proposed Scheduling Order is in line with schedules set by district courts in other recent merger challenges. In light of the extensive discovery the Division has already obtained during the past eight months it has spent investigating this merger, the Division will not suffer any prejudice should the Court schedule a trial to start October 1, 2019.

## ARGUMENT

### I. ONLY DEFENDANTS' PROPOSED TRIAL SCHEDULE PREVENTS SUBSTANTIAL HARM TO DEFENDANTS AND TO THE TRANSACTION.

Defendants will suffer substantial harm if a trial is not held before October 30, 2019, the merger's Expiration Date. Defendants' Merger Agreement provides that it can be terminated unilaterally by either Quad or LSC if the merger is not consummated by the Expiration Date. Should either party exercise that right, Quad would be required to pay LSC a $45 million breakup fee. Quad, LSC, and their customers would then lose the benefits of a transaction that promises to lower the combined company's printing costs, enabling it to continue offering low prices to customers.

If Defendants are unable to secure a trial date that concludes prior to the Expiration Date, the merger of Quad and LSC may fall apart because the two companies cannot remain in limbo for more than one year. In that scenario, the Division would effectively block the merger, not by convincing an independent trier of fact that the proposed transaction is likely to lessen competition in a properly defined market, but rather by delaying the prompt adjudication of their claim. Such a result would not be appropriate as a matter of procedural fairness in an antitrust case of this importance.

4

The Division's assertion that the Expiration Date is an "artificial deadline" that Defendants can just agree to extend (*see* Dkt. No. 25 at 4) grossly discounts the difficulty of extending the Expiration Date. Quad and LSC (and their customers, suppliers, and employees) are experiencing significant disruption from being held in limbo as the Division has conducted its lengthy review of the merger. One year is a very long time in a business where more and more customers are moving their content and advertising to digital platforms, driving down demand for print products. Quad and LSC must either (1) complete the transaction before the end of October 2019 so they can start realizing synergies as a combined firm, or (2) take action separately to adapt to the tectonic shifts in their industry. The latter course of action will impose greater burdens on, and achieve less cost savings for, customers than would result if a combined Quad/LSC assembles the most efficient and cost-effective platform.

An extension of the Expiration Date would require the consent of the boards of directors of both companies, and the ability to get that consent is highly uncertain in the present circumstances. LSC has lost, and will likely continue to lose, valuable employees and customers as a result of the uncertainty generated by the Division's lengthy investigation of the transaction, so LSC needs clarity as soon as possible, and certainly before the Expiration Date, as to whether the transaction will proceed. Further, under the terms of Quad's financing agreements with lenders, if the transaction does not close by the end of October 2019, Quad must bear an additional $44,657 in interest costs per day (or approximately $1.3 million per month).

In light of the serious adverse consequences resulting from delay, courts frequently hear merger challenges on an expedited basis. *See*, *e.g.*, *United States* v. *AT&T Inc.*, 310 F. Supp. 3d 161, 165 (D.D.C. 2018) (explaining that "[t]he parties have engaged in a highly accelerated discovery schedule" to prepare for an expedited trial before the upcoming expiration of the merger

5

agreement, to avoid a $500,000,000 fee if the merger was not consummated before the expiration date); *United States* v. *US Airways Grp., Inc.*, 979 F. Supp. 2d 33, 34–35 (D.D.C. 2013) (denying the Government's motion to stay litigation because "[t]his case involves a pending merger agreement between two major airlines, with a deadline for completion of January 18, 2014," and noting that "[a] stay at this point would undermine this schedule and delay the necessary speedy disposition of this matter").

Defendants' proposed schedule provides for a trial 103 days from the filing of the Complaint, which is in line with schedules set by district courts (and met by the Division) in other recent cases involving merger challenges by the Division. Many of these other cases involved a greater number of putative markets, or more complicated theories of alleged harm, than are alleged in this case. For example, in *United States* v. *US Airways Grp., Inc.*, No. 13-cv-1236 (D.D.C. filed Aug. 13, 2013), the district court set a trial date 104 days from the filing of the complaint for a merger challenge that involved hundreds of alleged airline markets. *See id.* Dkt. No. 71. Likewise, in *United States* v. *Anthem, Inc.*, No. 16-cv-1493 (D.D.C. filed July 21, 2016), the district court set a trial date 123 days from the filing of the complaint for a merger challenge that involved four product markets and more than 80 geographic markets. *See id.* Dkt. No. 68. Similarly, the last merger challenge that the Division litigated, *United States* v. *AT&T Inc.*, No. 1:17-cv-02511 (D.D.C. filed Nov. 20, 2017), involved complicated theories of vertical harm, and was prepared for trial on a 119-day schedule that spanned over the 2017 holiday season. *See id.* Dkt. No. 55.[2]

---

[2]    *See also*, *e.g.*, *United States* v. *Energy Solutions, Inc.*, No. 16-cv-01056 (D. Del. filed Nov. 16, 2016), Dkt. No. 103 (setting trial date following the denial of a motion to transfer for 76 days from start of fact discovery to trial, for a merger challenge with 4 product markets); *United States* v. *AB Electrolux*, No. 15-cv-1039 (D.D.C. filed July 1, 2015), Dkt. No. 28 (setting trial date 124 days from filing of complaint for a merger challenge with 6 product markets); *United States* v. *H&R Block, Inc.*, No. 11-cv-948 (D.D.C. filed May 23, 2011), Dkt. No. 30 (setting trial date 106 days from filing of complaint).

6

These cases demonstrate that Defendants' proposed October 1, 2019 trial date is reasonable, and that the Division does not need 145 days to get to trial after investigating already for eight months. Indeed, the two cases that the Division previously cited in its Opposition to Defendants' Motion to Set an Evidentiary Hearing Date in defense of a longer schedule—*United States* v. *Deere*, No. 1:16-cv-8515 and *United States* v. *JBS, S.A.*, No. 1:08-cv-5992 (*see* Dkt. No. 25 at 9-10)—actually prove the importance of having an expedited schedule in a merger challenge. Both of those deals were ultimately abandoned *before* trial due to the length of time it would take to get a decision on the merits. *See* Karl Plume, "Monsanto scraps deal to sell Precision Planting to Deere," *Reuters* (May 1, 2017), *available at* https://www.reuters.com/article/us-monsanto-m-a-deere/monsanto-scraps-deal-to-sell-precision-planting-to-deere-idUSKBN17X2FZ (quoting the CEO of the Precision Planting business: "We have a valuable business and people in limbo and it was just time to move on."); Dep't of Justice Statement on the Abandonment of the JBS/National Beef Transaction (Feb. 20, 2017), *available at* https://www.justice.gov/opa/pr/department-justice-statement-abandonment-jbsnational-beef-transaction.

## II. DEFENDANTS' PROPOSAL IS FAIR TO THE DIVISION.

The Division cannot credibly claim that it would be prejudiced by an October 1, 2019 trial date. It has been investigating this merger, gathering evidence from both parties and non-parties, and preparing for litigation for eight months. As the "Litigation" chapter of the Division's internal manual explains, "[w]ith the investigatory powers available to the Antitrust Division under the amendments to the Antitrust Civil Process Act and the premerger notification procedures established by the Antitrust Improvements Act of 1976, the Division has substantial prefiling investigatory tools to develop its case during the investigation." *See* U.S. Dep't of Justice, Antitrust Division Manual, Fifth Edition, Chapter IV: Litigation, Section C, *available at* https://www.justice.gov/atr/file/761146/download. The Division's prefiling investigation

7

includes "issuing [Civil Investigative Demands] to third parties to obtain information necessary to compute market shares and documents necessary to assess the relevant markets and competitive significance of the transaction; taking depositions and obtaining statements for use in court; retaining and working with experts; conducting legal research; reviewing second request documents; using litigation support systems; and preparing economic and other evidence on the competitive effects of the transaction." *See id.* at Chapter III: Investigation and Case Development, Section D.3, *available at* https://www.justice.gov/atr/file/761141/download; *see generally also United States* v. *Consolidated Foods Corp.*, 455 F. Supp. 142, 142 (E.D. Pa. 1978) ("It is important to note the broad pre-complaint discovery rights that Congress has bestowed upon the Justice Department in anti-trust cases.").

The Division engaged in all of this pre-filing discovery here. It issued Quad and LSC requests for additional information ("Second Requests") that each contained more than 40 broad requests for information, documents, and data on a range of ordinary-course business topics such as competition, marketing, customers, and competitors, as well as documents relating to the proposed merger between Quad and LSC. Defendants submitted more than 300 pages of interrogatory-style responses and produced more than 6 million documents, comprising nearly 20 million pages, from 48 document custodians and dozens of shared network drives in response to these requests, and others. Below are just a few examples of the Second Request document requests to which Defendants have already responded:

- "Submit, for [catalogs, magazines, and books], all documents created, altered, or received by the Company since January 1, 2013, relating to: a. discount requests or approvals (including rebates and other promotions); b. sales call reports; c. meeting competition requests or approvals; d. win/loss reports; e. prices, quotes, estimates, or bids submitted to any customer; and f. the results of any price, quote, estimate, or bid submitted to any customer or prospective customer."

8

- "Submit all documents [created, altered, or received by the Company since January 1, 2016,] relating to any actual or potential changes in the supply, demand, cost, price, or output of [catalogs, magazines, or books] as a result of competition."

- "Submit all documents relating to the Transaction, including: a. documents relating to all statements or actions by any person in support of or in opposition to the Transaction, or otherwise expressing any view about the Transaction or its likely effects . . . ."

Defendants' responses to the Second Requests included voluminous data extracts from Quad's and LSC's databases prepared after multiple conversations with the Division's economists, who dictated the scope of those data extracts. Through this process, the Division received, among other types of data: (a) monthly profit and loss statements, (b) plant-level and press-level capacity utilization information, and (c) job-level data reflecting customer pricing, costs, margins, and sales dollars associated with the manufacturing and distribution of each print job, to the extent that data is maintained by Quad and LSC.

Defendants produced 21 officers and employees for full-day, seven-hour depositions at the Division's offices in Washington, D.C.—more fact depositions than would ordinarily be available under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 30(a)(2) (court order required to take more than ten depositions). In addition, Quad also produced three corporate designees for a two-day Federal Rule of Civil Procedure 30(b)(6)-style deposition. These 22 depositions were taken under oath pursuant to Civil Investigative Demands and were transcribed by court reporters. Defendants are willing to stipulate that depositions of Quad and LSC employees taken pursuant to Civil Investigative Demands may be used at trial in the same manner as depositions taken pursuant to the Federal Rules of Civil Procedure, to the extent admissible under Federal Rule of Civil Procedure 32 and the Federal Rules of Evidence.

In addition, when the Division determined that there was information that it desired but had not requested through the Second Requests, the Division served two separate Civil

9

Investigative Demands on each of Quad and LSC (for a total of four Civil Investigative Demands). Quad and LSC responded to these Civil Investigative Demands by providing thousands of additional documents, as well as interrogatory-style responses to the Division's questions.

The Division also obtained discovery from third parties throughout the course of its investigation. The Division has not disclosed to Defendants how many third parties provided information to the Division (that information will not be shared until a protective order is entered in this case), but Defendants are aware that the Division took depositions of certain of Defendants' customers and competitors. Defendants suspect—but do not yet know for certain—that certain third parties also produced documents to the Division.

The Division characterizes this extensive discovery as "investigative discovery" that purportedly served the sole purpose of allowing the Division to determine whether to file this action, not to prepare for trial. *See* June 28, 2019 Hearing Tr. at 12:10-13:4; Dkt. No. 25 at 7. That characterization is unfair. The Division instructs its lawyers to "conduct the investigation with an eye on proving any violation in court," and to "always keep in mind its dual role: as analysts seeking to determine objectively whether a proposed transaction likely will substantially lessen competition and as litigators to develop the evidence necessary to support a challenge if the Division ultimately decides to file a suit." *See* U.S. Dep't of Justice, Antitrust Division Manual, Fifth Edition, Chapter III: Investigation and Case Development, Sections D & D.3, *available at* https://www.justice.gov/atr/file/761141/download.

By any measure, the Division has already conducted extensive fact discovery relevant to, and in preparation for, this litigation. While Defendants do not dispute that the Division will need to proffer expert testimony and may seek additional limited fact discovery both from the parties and from third parties, Defendants' Proposed Scheduling Order allows sufficient time to conduct

that reasonable, supplemental discovery in time for a trial before the transaction's Expiration Date.[3]

## CONCLUSION

Defendants respectfully request that the Court enter Defendants' Proposed Scheduling Order, setting a bench trial lasting six to ten days on the merits of the Division's request to permanently enjoin Quad's acquisition of LSC, to begin on or about **October 1, 2019**, or as soon thereafter as possible.

Dated: July 9, 2019

Respectfully submitted,

By: */s/ James T. McKeown*
James T. McKeown
Andrew J. Wronski (*pro hac vice*)
Alyssa S. Markenson (*pro hac vice*)
Max S. Meckstroth
   (*pro hac vice application pending*)
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: (414) 271-2400
Facsimile: (414) 297-4900
jmckeown@foley.com
awronski@foley.com
amarkenson@foley.com
mmeckstroth@foley.com

Joanne Molinaro
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
jmolinaro@foley.com

Respectfully submitted,

By: */s/ Bruce R. Braun*
Bruce R. Braun
Scott D. Stein
Caroline A. Wong
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
bbraun@sidley.com
sstein@sidley.com
caroline.wong@sidley.com

Steven L. Holley (*pro hac vice*)
Adam S. Paris (*pro hac vice*)
Bradley P. Smith (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
holleys@sullrcrom.com
parisa@sullcrom.com
smithbr@sullcrom.com

---

[3] Defendants do not oppose allowing a reasonable time period for discovery, and their Proposed Case Management Order, attached as Exhibit B, reflects how Defendants would propose handling discovery to allow for an October 1, 2019 trial date.

Benjamin R. Dryden (*pro hac vice*)
Jesse L. Beringer (*pro hac vice*)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: 202-672.5300
Facsimile: 202.672.5399
bdryden@foley.com
jberinger@foley.com

*Counsel for Defendants Quad/Graphics, Inc. and QLC Merger Sub, Inc.*

Samantha F. Hynes (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330
hyness@sullcrom.com

*Counsel for Defendant LSC Communications, Inc.*

**CERTIFICATE OF SERVICE**

Caroline A. Wong, an attorney, hereby certifies that on July 9, 2019, she caused the

foregoing Memorandum of Points and Authorities in Support of Defendants' Joint Motion for

Entry of Proposed Scheduling Order to be electronically filed using the CM/ECF system, which

will send notice of this filing to all counsel of record.

/s/ Caroline A. Wong
Caroline A. Wong
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603