**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DENNIS BORN, MARILYNN BORN, and
VALERIE BLOOM, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiffs,

      -v-

QUAD/GRAPHICS, INC., J. JOEL
QUADRACCI and DAVID J. HONAN,

                  Defendants.

Case No. 1:19-cv-10376-VEC

ORAL ARGUMENT REQUESTED

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Defendants Quad/Graphics, Inc., J.*
*Joel Quadracci, and David J. Honan*

October 26, 2020

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...........................................................................................................................1

    I.      PLAINTIFFS FAIL TO STATE A SECTION 10(B) CLAIM................................1

           A.      Plaintiffs Fail to Plead Actionable Misstatements or Omissions.................1

                  1.      No Alleged Facts Contradicting Challenged Statements.................1

                  2.      Forward-Looking Statements and Opinions are Not Actionable ......................................................................................4

                  3.      Statements of Puffery are Not Actionable ....................................7

           B.      Plaintiffs Fail to Plead Scienter.................................................................7

                    1.      Plaintiffs Fail to Plead Motive and Opportunity............................7

                    2.      Plaintiffs Fail to Plead Conscious Misbehavior or Recklessness ................................................................................8

                    3.      Plaintiffs Fail to Satisfy *Tellabs*.....................................................10

           C.      Plaintiffs Fail to Plead Loss Causation ......................................................10

CONCLUSION.........................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agnico-Eagle Mines Ltd. Sec. Litig.*,
    2013 WL 144041 (S.D.N.Y. Jan. 14, 2013),
    *aff'd sub nom. Forsta AP-Fonden v. Agnico-Eagle Mines Ltd.*,
    533 F. App'x 38 (2d Cir. 2013) ......................................................................................8

*In re Anheuser-Busch InBev SA/NV Sec. Litig.*,
    2020 WL 5819558 (S.D.N.Y. Sept. 29, 2020)...............................................................5

*In re AT&T/DirecTV Now Sec. Litig.*,
    2020 WL 4909718 (S.D.N.Y. Aug. 18, 2020) (Caproni, J.).............................1, 7, 10

*Barrett v. PJT Partners Inc.*,
    2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017) (Caproni, J.).............................................2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................4

*Bd. of Trs. of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*,
    811 F. Supp. 2d 853 (S.D.N.Y. 2011),
    *aff'd sub nom. Frederick v. Mechel OAO,*
    475 F. App'x 353 (2d Cir. 2012) ...................................................................................2

*In re Bristol Myers Squibb Co. Sec. Litig.*,
    586 F. Supp. 2d 148 (S.D.N.Y. 2008)............................................................................4

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
    540 F. Supp. 2d 464 (S.D.N.Y. 2008)............................................................................8

*City of Warren Police & Fire Ret. Sys. v. WWE Inc.*,
    2020 WL 4547217 (S.D.N.Y. Aug. 6, 2020)...............................................................7, 9

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    2016 WL 6652731 (S.D.N.Y. Nov. 10, 2016).................................................................7

*Colbert v. Rio Tinto PLC*,
    2020 WL 4516774 (2d Cir. Aug. 6, 2020)......................................................................2

*Constr. Laborers Pension Trust. for S. Cal. v. CBS Corp.*,
    433 F. Supp. 3d 515 (S.D.N.Y. 2020) (Caproni, J.) .....................................................7

*Gavish v. Revlon, Inc.*,
    2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004)................................................................5

ii

*In re Gen. Elec. Co. Sec. Litig.*,
  857 F. Supp. 2d 367 (S.D.N.Y. 2012)...................................................................................6

*In re Gen. Elec. Sec. Litig.*,
  2020 WL 2306434 (S.D.N.Y. May 7, 2020) ..........................................................................5

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ..........................................................................6

*Martinek v. AmTrust Fin. Servs., Inc.*,
  2020 WL 4735189 (S.D.N.Y. Aug. 14, 2020) .......................................................................4

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ...............................................................................................................7

*Plumbers & Steamfitters Local 773 Pension Fund v. Danske Bank*,
  2020 WL 4937461 (S.D.N.Y. Aug. 24, 2020) (Caproni, J.)...............................................1, 2

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)....................................................................................................7

*In re Scottish Re Grp. Sec. Litig.*,
  524 F. Supp. 2d 370 (S.D.N.Y. 2007).....................................................................................9

*Shemian v. Research In Motion, Ltd.*,
  2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013),
  *aff'd*, 570 F. App'x 32 (2d Cir. 2014)....................................................................................8

*Speakes v. Taro Pharm. Indus., Ltd.*,
  2018 WL 4572987 (S.D.N.Y. Sept. 24, 2018).........................................................................9

*In re Sprint Corp. Sec. Litig.*,
  232 F. Supp. 2d 1193 (D. Kan. 2002)......................................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...............................................................................................................10

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016).....................................................................................................2

*In re Vivendi Universal S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011),
  *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*,
  838 F. 3d 223 (2d Cir. 2016)....................................................................................................7

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998).....................................................................................................8

iii

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
    426 F. Supp. 3d 864 (D. Kan. 2019)......................................................................................9

**Statutes and Rules**

15 U.S.C. § 78u-4(b) ("PSLRA") .........................................................................1, 2, 4, 5

Fed. R. Civ. P. 9(b) .................................................................................................................2

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief ("Opposition" or "Opp.") does not meaningfully address, much less cure, the many legal deficiencies of the Complaint ("AC") identified in Defendants' moving brief ("Motion" or "Mot."). Instead, Plaintiffs repeat the same conclusory allegations concerning three unrelated, supposed "frauds" involving (i) a failed acquisition, (ii) an earnings miss, and (iii) the sale of a business. None of the allegations hang together or come close to satisfying the rigorous PSLRA pleading standards as applied by this Court in its recent decisions, which Plaintiffs ignore.[1]

Plaintiffs cannot cite a single case in this Court, and we are aware of none, upholding a securities complaint as weak as this one where there are (1) no allegations of insider selling or any other cognizable motive to commit fraud, (2) no allegations attributed to any confidential witnesses or contemporaneous information that contradict public statements, and (3) no admitted wrongdoing at the end of the class period or a restatement of earnings. While, as Plaintiffs contend, a court may look at allegations "holistically," a series of unsupported and illogical assertions are not elevated to legal sufficiency because they are lumped together.

## ARGUMENT

## I. PLAINTIFFS FAIL TO STATE A SECTION 10(B) CLAIM

### A. Plaintiffs Fail to Plead Actionable Misstatements or Omissions

#### 1. *No Alleged Facts Contradicting Challenged Statements*

Plaintiffs acknowledge that the AC challenges almost every statement Quad made over a nearly two-year period about the proposed acquisition with LSC and its defense of the DOJ antitrust action challenging the acquisition, its 3.0 transformation plan and 2019 guidance, and the

---

[1] *See*, *e.g.*, *In re AT&T/DirecTV Now Sec. Litig.*, 2020 WL 4909718 (S.D.N.Y. Aug. 18, 2020) (Caproni, J.); *Plumbers & Steamfitters Local 773 Pension Fund v. Danske Bank*, 2020 WL 4937461 (S.D.N.Y. Aug. 24, 2020) (Caproni, J.).

sale of its wood-crating business, Transpak.[2] Opp. at 1-5, 8.[3] While Plaintiffs characterize the challenged statements as "a network of interrelated lies" (Opp. at 8), there is simply nothing pled based on any confidential witness, document or admission which shows that the statements were false or misleading when made, let alone that there was an overarching fraudulent scheme to mislead investors.[4] And contrary to Plaintiffs' misconception, it is the PSLRA and Rule 9(b), not Defendants' argument, which mandates particularized allegations supporting a contention of securities fraud.[5] Plaintiffs' fallback position that falsity is evinced by the market's "reaction" when Quad announced disappointing results in 3Q19 and its stock price declined (Opp. at 12) is precisely the type of hindsight pleading that courts routinely reject under well-settled precedent.[6]

*Quad's 3.0 Plan.* Plaintiffs chant the AC's mantra that Defendants failed to disclose that the pace of the 3.0 plan needed to be "significantly and rapidly accelerated" to offset the disclosed declines in the print business (*e.g.*, Opp. at 9). But rather than state even a single allegation that

---

[2] Contrary to Plaintiffs' position (*see* Opp. at 8 n.5) it is well-established that courts may consider "public disclosure documents required by law to be, and that have been, filed with the SEC," and "facts of which judicial notice properly may be taken" on a motion to dismiss. *Bd. of Trs. of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 865 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012). It is "'proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents.'" *Colbert v. Rio Tinto PLC*, 2020 WL 4516774, at *4 n.5 (2d Cir. Aug. 6, 2020).

[3] Although Plaintiffs contend they are not "puzzle pleading" (Opp. at 6 n.4), the AC is "marked by lengthy block quotes followed by pro forma reasons why the statements quoted are allegedly false," and is thus precisely the type of pleading that courts routinely reject as insufficiently particularized. *Plumbers*, 2020 WL 4937461, at *3 (Caproni, J.) (complaint using "two terse paragraphs generically to allege why 36 pages of quotations spanning 83 paragraphs contain false or misleading statements" was "far too great a weight for sweeping explanations of fraud to bear" and was not salvaged by plaintiffs' "bolding [of] statements alleged to be false and misleading"); *see* Mot. at 12.

[4] *In re Vivendi, S.A. Sec. Litig.*, relied on by Plaintiffs, highlights the deficiencies of Plaintiffs' allegations. 838 F.3d 223, 250 (2d Cir. 2016). There, falsity allegations were supported by a substantial evidentiary record of a "vast" fraud touching on "many aspects of [defendant's] business," and a prior jury had already determined that the challenged statements were materially false or misleading based on that record. *Id*.

[5] Opp at 10. *See Barrett v. PJT Partners Inc.*, 2017 WL 3995606, at *4 (S.D.N.Y. Sept. 8, 2017) (Caproni, J.); *see also Plumbers*, 2020 WL 4937461, at *3 (Caproni, J.) ("Failing to meet Rule 9(b) and the PSLRA's pleading requirements alone is reason to dismiss a complaint").

[6] *See* Mot. at 15 & n.27. None of Plaintiffs' cases (Opp. at 12-13) stand for the dubious proposition that a market reaction alone can satisfy the PSLRA's requirement of particularized facts demonstrating falsity. Plaintiffs' reading would do away with the PSLRA's standard entirely.

2

the 3.0 plan was, in fact, not proceeding apace and performing as publicly disclosed during the Class Period, Plaintiffs point only to Quad's *end*-of-Class Period disclosure that it was accelerating the 3.0 plan and optimizing its product portfolio for the long-term, which included divesting its book business.[7] *See* Opp. at 10. Defendants are not required to predict future events. Mot. at 15. Moreover, a business decision to "accelerate" a transformation plan hardly lends any logical support to the notion that prior reported results or statements describing the 3.0 plan's progress were false or misleading. Mot. at 13-15, 23-24.

*LSC Acquisition.* Plaintiffs claim that an undisclosed "price war" between LSC and Quad alleged in the DOJ antitrust complaint challenging the acquisition made the LSC acquisition necessary for Quad to achieve its 2019 guidance. *See* Opp. at 4, 13. But Defendants demonstrated that Quad truthfully disclosed the projected benefits to Quad of the acquisition with LSC, one of its largest competitors, and also warned of the risks if the acquisition were not completed. Mot. at 7. Nothing more was required, nor was Quad required to agree with or adopt Plaintiffs' or the DOJ's pejorative "price war" terminology. Mot. at 17 n.32.

Plaintiffs also claim Quad lied about the status of the DOJ's antitrust review when it said it was proceeding "as planned," and that the company was engaged in an "active dialogue" with the DOJ, because Quad failed to "disclose facts that could impact the review process." Opp. at 15. But Plaintiffs do not identify those supposed undisclosed facts, and further ignore all of Quad's cautionary disclosures about the ongoing review and the attendant risks if the requisite government approvals were not obtained. Mot. at 7 & n.11. That the DOJ eventually brought an antitrust suit,

---

[7] Plaintiffs' contention that Quad misleadingly portrayed its book business as "successful and growing" (Opp. at 10) is not only contradicted by the very disclosures they cite (*e.g.*, Dkt. 71-25 (3Q19 Earnings Call held on Oct. 30, 2019) at 6-7 (book business was "underperforming"))—it is also contradicted by Plaintiffs' own pleading. *See* AC ¶ 211 (conceding that Defendants described Quad's book business as a "challenged area"); ¶ 192 (indicating that by mid-2019, although "books has been a better story as of late," it was "still a challenged area" and was "off about 4%" compared to the industry).

which was timely disclosed, does not render all of Quad's prior statements about the ongoing review false and misleading.[8]

Plaintiffs also repeat their misguided claim that Quad misled the market when it said it would defend the DOJ suit, but then terminated the acquisition a month later. Of course, Plaintiffs ignore the significant intervening event which led to the decision to terminate: the trial court's unexpected denial of Quad and LSC's joint request for an expedited proceeding, which created an untenable and uneconomical delay and risk as Quad disclosed. *See* Mot. at 7-8.

***Transpak Sale.*** Plaintiffs repeat their unsupported challenge to Quad's disclosure that it intended to use the proceeds from the $10M sale of Transpak to reduce debt, based solely on the supposed "suspicious" timing of the announced sale and the settlement with the SEC of an FCPA claim a month later for a similar amount. Opp. at 17. Plaintiffs' "suspicion" does not show falsity,[9] and they ignore the undisputed public facts showing that Quad regularly paid down its debts, had ample liquidity (over $700 million) at the time of the SEC settlement, and had no demonstrable need to use the immaterial Transpak sale proceeds to fund it. *See* Mot. at 10-11, 24-25.

### 2.   *Forward-Looking Statements and Opinions are Not Actionable*

As shown in the Motion, many of the challenged statements are protected under the PSLRA safe harbor for forward-looking statements because (i) they were identified as such and

---

[8] Unlike here, the cases relied on by Plaintiffs involved particularized allegations of specific information that was withheld which rendered public statements misleading. *See, e.g.*, *In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1219-20 (D. Kan. 2002) (allegations that defendants failed to disclose a meeting at which DOJ suggested merger approval was unlikely, the FCC's suspension of an investigation which defendants internally described as an "'extremely negative development,'" and that the regulator informed company of its "serious concerns" regarding merger); *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 159-60 (S.D.N.Y. 2008) (defendants' representation that they would "vigorously pursue" enforcement of patent rights was false and misleading in light of allegations that they had already bargained away those rights in a secret settlement).

[9] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (pleading must contain more than "'a statement of facts that merely creates a suspicion [of] a legally cognizable right of action'"). *Martinek v. AmTrust Fin. Servs., Inc.* (Opp. at 17) involved much more than a mere "suspicion"—there, defendants repeatedly stated that its stock would continue to be listed post-merger, but promptly de-listed the stock after the merger's closing. 2020 WL 4735189, at *12 (S.D.N.Y. Aug. 14, 2020).

accompanied by meaningful cautionary language; and, independently, (ii) Plaintiffs fail to plead that these forward-looking statements were made with actual knowledge of falsity. Mot. at 14-16. Indeed, Quad's 2019 earnings guidance is a quintessentially forward-looking statement,[10] as are the challenged statements describing Quad's intentions for its 3.0 plan, the plan's anticipated results, and statements regarding Quad's ability to maintain its dividend in the future.[11]

Plaintiffs' primary response is that Defendants made the forward-looking statements argument too succinctly in their moving papers without separately listing each relevant statement. Opp. at 19. Brevity and clarity strengthen, not weaken, an argument. It was simply not practical or necessary to repeat the myriad of challenged statements over 18 months, block-quoted in over 60 paragraphs of the nearly 100-page AC. Still, the Motion clearly identified the categories of challenged forward-looking statements, including Quad's 2019 guidance, with examples and cites to the AC (Mot. at 3, 7, 13-16, 18-19; nn.22-24, 28, 34, 36), cited to where Quad identified its statements as forward-looking in its SEC filings (*id*. at 5-6, 11, 14; nn.3-6, 25), and detailed the accompanying meaningful risk factors (*id*. at 5-7, 9, 14-15, 19; nn.11, 15, 36-37). Plaintiffs also respond that Quad's risk warnings were not "meaningful" because they did not disclose the supposed "price war with LSC and the current need to rapidly accelerate the 3.0 transition far beyond existing levels." Opp. at 20. But Plaintiffs' conclusory assertion is unsupported by any particularized allegation that the disputed and alleged LSC "price war" was actually impacting Quad's business—Plaintiffs do not challenge any of Quad's actual results—or that Quad 3.0 was

---

[10] *See* Mot. at 18-19 & n.36 (citing cases).

[11] Courts regularly find these types of statements to be forward-looking. *Compare, e.g.*, AC ¶ 156 ("confident in our transformation strategy") *with In re Gen. Elec. Sec. Litig.*, 2020 WL 2306434, at *10 (S.D.N.Y. May 7, 2020) ("'confident this is not a significant issue'"); AC ¶ 171 ("intends to continue to pursue . . . acquisitions") *with Gavish v. Revlon, Inc.*, 2004 WL 2210269, at *21 n.6 (S.D.N.Y. Sept. 30, 2004) ("'intend to pursue the fundamental business strategy'"); AC ¶ 191 ("continued commitment to our dividend") *with In re Anheuser-Busch InBev SA/NV Sec. Litig.*, 2020 WL 5819558, at *4 (S.D.N.Y. Sept. 29, 2020) ("'continue[d] to expect dividends'"); *see also* Mot. at 14-15, 19.

not proceeding as disclosed. Plaintiffs' cited authorities are inapposite because plaintiffs in those cases, by contrast, alleged that the warned-of risks had already materialized.[12]

Plaintiffs also fail to demonstrate that any of the challenged forward-looking statements, including the 2019 guidance, were made with actual knowledge of their falsity. Plaintiffs claim "*then-known*" facts contradicted the challenged forward-looking statements, but point to none. Opp. at 20. And contrary to Plaintiffs' contention that Quad's 2019 guidance was "linked" to the successful acquisition of LSC which was then terminated (*id.* at 20-21), Quad expressly disclosed that 2019 guidance *"does not* reflect the pending acquisition of LSC."[13]

Defendants also established that numerous challenged statements are inactionable opinions, including Quad's beliefs about its growth prospects under the 3.0 plan, the viability of the book business, the status of the DOJ's review, and the intended use of proceeds from the Transpak sale. Mot. at 15-17. Because they have no substantive response, Plaintiffs again claim this argument "should 'not be considered'" because it was "drastically undeveloped," nevertheless citing three pages of the Motion making the argument. Opp. at 21. And while Plaintiffs claim these statements were not "opinions" but statements of the "then-current state of affairs" at Quad (*id.* at 21), they do not articulate why or how any particular statement was one of then-current affairs.

Nor do Plaintiffs rebut Defendants' showing that Plaintiffs have failed to plead facts showing that Defendants "did not hold the belief [] professed" or omitted a "material fact"

---

[12] Opp. at 21; *see In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561, at *19 (S.D.N.Y. Dec. 2, 2013) (positive forward-looking statements not protected by safe harbor where plaintiff showed that the fully-disclosed risk had "already . . . materialized" at the time the challenged statements were made); *In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 402 (S.D.N.Y. 2012) (forward-looking statements actionable where plaintiff "alleged facts . . . that undermine the accuracy of these representations").

[13] Dkt. 71-4 (4Q18 and FY2018 Earnings Release dated Feb. 19, 2019) at 9 (emphasis added). In claiming Defendants knowingly and falsely reaffirmed 2019 guidance after the terminated LSC acquisition, Plaintiffs misleadingly quote Mr. Quadracci as having acknowledged a "link" between the two. He did not. Mr. Quadracci merely stated that Quad was making long-term investments in productivity to prepare for the potential acquisition. Dkt. 71-10 (4Q18 Earnings Call held on Feb. 20, 2019) at 11-12.

rendering the challenged opinion statement false or misleading as required by *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015). Mot. at 16. Plaintiffs solely respond that Defendants could not have believed in their 2019 guidance or in the hoped-for success of the 3.0 plan after the LSC acquisition was terminated (Opp. at 14-15), but again, Plaintiffs (and the AC) do not supply the requisite link between the failed acquisition and the Company's guidance or its beliefs about the 3.0 plan.[14]

### 3. *Statements of Puffery are Not Actionable*

Contrary to Plaintiffs' misguided view (Opp. at 18), statements which are mere puffery cannot be considered material and support Section 10(b) claims. *See AT&T*, 2020 WL 4909718, at \*9 (Caproni, J.) ("Vague, rosy predictions" that a "business is 'uniquely positioned to win market share' and possesses 'significantly enhanced capabilities,' has 'competitive advantage[s],'" and "on a path to 'continued prosperity'" are inactionable).[15] *See* Mot. at 16-17.

### B. Plaintiffs Fail to Plead Scienter

### 1. *Plaintiffs Fail to Plead Motive and Opportunity*

As Defendants established, Plaintiffs' generalized and cookie cutter "motive"—that

---

[14] Once again, Plaintiffs' authorities do nothing to support their argument, as plaintiffs in those cases pled particularized facts—supported by more than conclusory assertions—that the issuer either subjectively disbelieved its opinion, or that then-existing material facts were omitted. *See City of Warren Police & Fire Ret. Sys. v. WWE Inc.*, 2020 WL 4547217, at \*7 (S.D.N.Y. Aug. 6, 2020) (allegations and witness testimony that WWE "failed to reach anything approaching an agreement" for a deal at the time company stated it believed it had in fact reached agreement); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 2016 WL 6652731, at \*10 (S.D.N.Y. Nov. 10, 2016) (allegations that company uncovered a $25M reserve shortfall prior to stating that its reserves were adequate).

[15] Plaintiffs' attempted distinction between puffery and materiality (Opp. at 18 n.12) misses the mark. *Rombach v. Chang* holds that "expressions of puffery and corporate optimism do not give rise to securities violations." 355 F.3d 164, 173-74 (2d Cir. 2004). And, as this Court—and Plaintiffs' own authority—explained, puffery is, "by definition, not material." *Constr. Laborers Pension Trust. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 531 (S.D.N.Y. 2020) (Caproni, J.); *In re Vivendi Universal S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 572 (S.D.N.Y. 2011) ("[p]uffery is an optimistic statement that is so vague, broad, and non-specific that a reasonable investor would not rely on it, thereby rendering it immaterial as a matter of law"), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F. 3d 223 (2d Cir. 2016); *AT&T*, 2020 WL 4909718, at \*9 (Caproni, J.) ("reasonable investors do not place 'substantial reliance on generalizations regarding a company's health or the strength of a company's product'").

Defendants sought to "artificially inflate the Company's stock price" (AC ¶ 238)—has been repeatedly rejected as a matter of law. Mot. at 19. Plaintiffs do not contest this legal insufficiency and instead assert, for the first time and without a shred of particularized support, that Defendants were "motivated to artificially inflate Quad's stock price *to achieve the specific goal of acquiring LSC.*" Opp. at 27 (emphasis added). No particularized support for this new contention appears in the AC except for a fleeting reference to Quad's stock price enabling the acquisition in the Background section of the AC (¶ 131)."[16]

### 2.    *Plaintiffs Fail to Plead Conscious Misbehavior or Recklessness*

In the absence of motive, Plaintiffs must show "correspondingly greater" allegations of either conscious misbehavior or recklessness. Mot. at 20. Plaintiffs have not come close here. Their shopworn scienter allegations—based on the Individual Defendants' corporate positions, SOX certifications, and the "core operations" doctrine, among others—have been repeatedly rejected. *See* Mot. at 20-23.

Plaintiffs retreat to their argument that scienter allegations must be viewed "holistically." *See* Opp. at 24-25. Multiple insufficient scienter allegations do not become sufficient simply by being lumped together. As the Southern District of New York has recognized, the allegation that "zero plus zero plus zero plus zero plus zero adds up to something" is faulty scienter arithmetic. *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008).

---

[16] It is well-established that a plaintiff may not re-plead through its opposition brief. *See*, *e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Shemian v. Research In Motion, Ltd.*, 2013 WL 1285779, at *14 (S.D.N.Y. Mar. 29, 2013) (declining to consider plaintiffs' 10(b) scienter argument because "[i]t was not until his filing of opposition papers in connection with this motion that Plaintiff first drew a connection between the acquisitions and an alleged motive to enhance the PlayBook."), *aff'd*, 570 F. App'x 32 (2d Cir. 2014). This is particularly true where, as here, Plaintiffs were expressly given the opportunity to amend their complaint in lieu of filing an opposition and declined to do so. *See* Dkt. 66 (Stipulation & Order re Time to File and Respond to Am. Compl.). Regardless, the mere existence of an impending stock-for-stock merger, without more, is insufficient to plead motive. *See In re Agnico-Eagle Mines Ltd. Sec. Litig.*, 2013 WL 144041, at *12 (S.D.N.Y. Jan. 14, 2013), *aff'd sub nom. Forsta AP-Fonden v. Agnico-Eagle Mines Ltd.*, 533 F. App'x 38 (2d Cir. 2013).

Plaintiffs' reliance on *WWE* and *Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 426 F. Supp. 3d 864 (D. Kan. 2019) is entirely misplaced. Not only is *CURO* non-binding, but plaintiffs in both cases alleged particularized facts sufficient to support an inference of scienter, with circumstantial evidence merely serving as additional support. *See CURO*, 426 F. Supp. 3d at 875 (finding plaintiffs alleged at least two concrete and particularized motives, including insider trading); *WWE*, 2020 WL 4547217, at *8 (finding defendants' *admission* that WWE had agreed to an early termination of a media rights agreement was "by itself . . . enough to indicate that WWE was aware of the termination of the OSN Agreement and its inability to be renewed."). Plaintiffs here offer no particularized allegations—either through a confidential witness or any contemporaneous information—of known facts contradicting Defendants' public statements concerning the progress of Quad 3.0, the LSC acquisition, Quad's 2019 guidance, or the use of the Transpak sale proceeds. *See* Mot. at 13-14, 18, 24.

Similarly, Plaintiffs' protestations that it would be "absurd" or "inconceivable" that Defendants were not aware of contrary facts because they spoke generally about Quad 3.0 and the LSC acquisition, or that Defendants "must have educated [themselves]" about contradictory information (Opp. at 26) do not relieve Plaintiffs of their obligation to plead the existence of actual particularized facts that Defendants were aware of contradicting their public statements.[17]

---

[17] Again, Plaintiffs' cited cases undercut their contention. *See WWE,* 2020 WL 4547217, at *8; *Speakes v. Taro Pharm. Indus., Ltd.*, 2018 WL 4572987, at *8 (S.D.N.Y. Sept. 24, 2018) ("Plaintiffs' scienter allegations as to the individual Defendants are premised upon their well-supported allegations regarding the price-fixing conspiracy, and the regular pricing meetings that the individual Defendants attended (as corroborated by confidential witnesses)"); *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 393-94 (S.D.N.Y. 2007) (finding, based on specific allegations made by confidential witnesses, that this was "not a case where plaintiffs are pleading fraud based on changed circumstances that were unforeseen by defendants at the time they made their statements . . . plaintiffs have cited contemporaneous circumstances . . . of which the [defendants] were aware").

### 3.    *Plaintiffs Fail to Satisfy Tellabs*

Based on the public disclosures themselves and common sense, the non-fraudulent inference here is easily stated and has not been met with any compelling inference to the contrary: *Quad timely and accurately described (i) the progress of its 3.0 transformation plan and the associated risks in light of a declining print business, (ii) a hoped-for acquisition that did not transpire due to DOJ action, and (iii) disappointing 3Q19 results coupled with strategic decisions (including a reduction in the dividend) to strengthen the busin*ess. *See* Mot. at 3, 23. Noticeably absent from both the AC and Opposition is *any* fraudulent theory—let alone one supported by well-pleaded facts and not just Plaintiffs' conjecture—that is "'cogent and *at least as compelling as any opposing inference one could draw from the facts alleged.'" AT&T*, 2020 WL 4909718, at *15 (Caproni, J.) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007)).

### C.    Plaintiffs Fail to Plead Loss Causation

Plaintiffs contend that Quad's stock price decline following its 3Q19 disclosures alone satisfies the loss causation requirement. *See* Opp. at 29. Plaintiffs are wrong. Defendants have not pled the required nexus between the nearly two years of alleged misstatements concerning the disparate topics of Quad 3.0 and the LSC acquisition, and Quad's announcement of disappointing 3Q19 results and stock drop. *See* Mot. at 23-24. And by their silence on the issue, Plaintiffs also concede their failure to plead loss causation with respect to the alleged misstatement concerning the Transpak sale.

### CONCLUSION

For the foregoing reasons, the AC should be dismissed in its entirety and with prejudice.

10

Dated: New York, New York
      October 26, 2020

Respectfully submitted,

  /s/ Joseph S. Allerhand
Joseph S. Allerhand
Stacy Nettleton
Nicole E. Prunetti
Tania C. Matsuoka
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Counsel for Defendants Quad/Graphics, Inc., J.
Joel Quadracci, and David J. Honan*